CATHARINE DE WOLF, Appellant, v. SIMEON FORD et al., Respondents.

1. DISMISSAL OF COMPLAINT ON OPENING. On dismissal of a complaint at a trial without taking evidence, the court must assume that the allegations of the pleading are true.

2. RIGHTS AND RESPONSIBILITIES OF AN INNKEEPER AS TO THE PERSON OF HIS GUEST. An innkeeper, in order to carry out his express or implied contract to furnish his guest with such convenience and comfort as the inn affords, must have access to the room assigned such guest at such reasonable hours as will enable him to fulfill his duty in that regard, and to make and enforce reasonable rules to prevent misconduct by guests,

But these rights must be exercised and rules enforced in such a way as is consistent with the rights of the guest, who is entitled to respectful treatment and protection from incivility. A guest for hire at any inn is entitled to the exclusive and peaceable possession of the room assigned, subject only to such proper intrusions by the innkeeper and his servants as may be necessary in the regular and orderly conduct of the inn, or under some commanding emergency. An innkeeper or his male servants cannot enter the room of a female guest, without her consent, at any hour they may choose, and there is no authority for claim of such right in the rule that an innkeeper must control every part of his inn for the protection of his guests.

*de Wolf* v. *Ford*, 119 App. Div. 808, reversed.

(Argued October 22, 1908; decided November 17, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 10, 1907, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

This action was brought to recover damages which the plaintiff claims to have sustained through the acts of the defendants' servant, who is charged with forcing his way into a room occupied by the plaintiff in defendants' hotel, and addressing to her insulting, derogatory and defamatory language. The action was brought to trial before the court and a jury. At the opening of the trial the defendants' counsel moved to dismiss the complaint upon the pleadings. This motion was granted and judgment entered dismissing the complaint. Upon appeal to the Appellate Division the judgment was affirmed by a divided court, and an appeal has been taken to this court. The sole question to be determined here is whether, upon the facts stated in the complaint and supplemented by the allegations of the defendants' answer, the case should have been submitted to the jury.

The complaint alleges that on June 5th, 1905, the defendants managed and controlled the Grand Union Hotel in the city of New York, which was a public inn for the entertainment of guests for hire; that the plaintiff, in company with her daughter and her brother, called at that hotel and applied for rooms, giving their true and proper names and stating the

relationship of each to the other; that the plaintiff and her brother and daughter were thereupon received as guests of the hotel, and the plaintiff was assigned to a room therein; that thereafter and at about one o'clock in the morning of the next day, while the plaintiff was occupying the room so assigned to her, one of the servants of the defendants, in the course of his regular employment in the hotel, forced his way into the room of the plaintiff without her consent and against her protest, she being then undressed except in a nightgown, and addressed to her and in her presence, and in the presence of her brother and another person, vile and insulting language, charged her with being a disreputable person, accused her of conduct imputing guilt of impropriety and immorality, and insulted her in other ways; that the plaintiff was ordered to leave the hotel and threatened with the publication of her name in the daily papers as a disreputable person; and that these acts committed by the said defendants' servant were in violation of the defendants' obligations towards this plaintiff as their guest.

In their answer the defendants admit their management and control of the hotel and that the plaintiff was assigned to a room therein on the day mentioned in the complaint. All the other allegations of the complaint are denied. Additional facts are set forth as a separate defense, and new matter is alleged by way of justification. The substance of this separate defense and of this new matter is, that the defendants had established and enforced in their hotel a rule forbidding the presence of a man in a woman's bedroom, especially at night, unless the room was occupied by husband and wife; that such a rule was reasonable and necessary for the maintenance of the good repute of the hotel and for the protection of its guests against improper persons; that the plaintiff had violated this rule by permitting a man to enter and remain in her bedroom at a late hour of the night while she was clad only in a nightdress; that the defendants' servant informed plaintiff of the rule referred to and requested her male visitor to leave the room, or to leave the hotel, and that this request was refused; that the acts of the defendants' servant com-

plained of were simply such as were necessary to enforce this rule; and that no more was done than was reasonably necessary to accomplish that object.

*James L. Bennett* for appellant. A good cause of action on contract was alleged in the complaint. (*Clancy* v. *Barker*, 98 N. W. Rep. 440; *Dwinelle* v. *N. Y. C. & H. R. R. R. Co.*, 120 N. Y. 117; *Gillespie* v. *B. H. R. R. Co.*, 178 N. Y. 347; *Busch* v. *I. R. T. Co.*, 187 N. Y. 388.)

*John C. Gulick* and *Franklin Pierce* for respondents. A cause of action against the defendant was not alleged in the complaint. The cause of action set forth in the complaint is not a cause of action upon contract; nowhere does the plaintiff allege that her cause of action is based upon contract; no word in the complaint unreservedly and clearly indicates that the cause of action is upon contract. (*Stanley* v. *Bucher*, 78 Mo. 245; *Webber* v. *H., etc., Ry. Co.*, 109 N. Y. 311; *Wade* v. *Kalbfleisch*, 58 N. Y. 285; *Rahmel* v. *Lehndorf*, 142 Cal. 681.) The common law of England, holding the innkeeper liable only for his guest's property, and not for injury to the guest's person, has not been changed since such common law became part of the law of this state. (N. Y. Const. art. 1, § 16; *Waters* v. *Girard*, 189 N. Y. 302.) There was no unlawful entry. Therefore the gist of the cause of action falls and with it fall all the allegations made for the purpose of aggravating the damages. (*Clarke* v. *Van Vranken*, 20 Barb. 278; *Dunckle* v. *Kocker*, 11 Barb. 387; *Gilbert* v. *Pritchard*, 41 Hun, 46; *Whatling* v. *Nash*, 41 Hun, 579; *Rodgers* v. *People*, 86 N. Y. 360; *Doyle* v. *Walker*, 26 U. C. Q. B. 502; *Fell* v. *Knight*, 8 Mees. & W. 269; *Jenks* v. *Coleman*, 2 Sumn. 221 *Markham* v. *Brown*, 8 N. H. 253; *Curtis* v. *Murphy*, 53 Am. Rep. 242.)

WERNER, J. As no evidence was taken at the trial, the dismissal of the complaint compels us to assume the truth of all the allegations of fact contained in that pleading. (*Sheri-*

*dan* v. *Jackson,* 72 N. Y. 170; Baylies Trial Pr. [2d ed.] 247.)
The facts which must, therefore, be regarded as established for
the purposes of this review are that the relation of innkeeper
and guest existed between the defendants and the plaintiff at
the time when the servant of the former forced his way into
the room of the latter; that this forcible entry was made
without invitation from the guest and against her protest; that
she was there subjected to the mortification of exposing her
person in scant attire, and to the ignominy of being accused
of immoral conduct; that she and her visitor were ordered to
depart from the hotel, and that all this was done by the
defendants' servant without justification and in the course of
his regular employment. If the defendants, in these cir-
cumstances, are not to be held responsible, it must be upon
the theory that they owed no duty to the plaintiff in respect
of her convenience, privacy, safety and comfort while she
was their guest, and that an innkeeper is immune from liabil-
ity for any maltreatment which he or his servants may inflict
upon a guest be it ever so willful or flagrant. We think it
may safely be asserted that this has never been the law, and
that no principle so repugnant to common decency and jus-
tice can ever find lodgment in any enlightened system of
jurisprudence.

For centuries it has been settled in all jurisdictions where
the common law prevails, that the business of an innkeeper is
of a *quasi* public character, invested with many privileges and
burdened with correspondingly great responsibilities. Except
as the general rule of the common law is modified by statu-
tory enactment, an innkeeper has the undoubted right to con-
duct his inn as he deems best so long as he does not violate
the law. Although he impliedly invites the public to his
establishment he is bound to furnish no particular kind of
entertainment or accommodation, except such as may be
expressly stipulated for, or such as may be reasonably implied
from the prices which he charges, or the grade of the inn
which he maintains. And while he is bound to accept as
guests all proper persons so long as he has room for them, he

is under no legal obligation to assign a guest to any particular apartment. (*Fell* v. *Knight*, 8 M. & W. 269.) From the very nature of the business it is inevitable that an innkeeper must, at all reasonable times and for all proper purposes, have the right of access to and control over every part of his inn, even though separate parts thereof may be occupied by guests for hire. Over against these general rights and privileges there is the well-recognized responsibility of the innkeeper for the guest's goods and chattels brought to the inn. As to these the innkeeper is an insurer unless his common-law duty is modified by statute, and he is liable for all loss except such as is occasioned by the negligence or fraud of the guest, or by the act of God or the public enemy. (*Hulett* v. *Swift*, 33 N. Y. 571.) Although this liability of the innkeeper for the loss of goods intrusted to him by his guest was clearly defined nearly four centuries ago, it has been reserved for us at this late day in the development of our jurisprudence to define, with such accuracy as the nature of this case requires, the relation of the innkeeper to the person of his guest. It is clearly not the conventional relation of landlord and tenant, for there is no contract as to the realty. (Taylor's L. & T. sec. 66.) A room in an inn occupied by a guest is not in the legal sense his dwelling house, for notwithstanding his occupancy, it is the house of the innkeeper. (*Rodgers* v. *People*, 86 N. Y. 360.) Nor is the relation of innkeeper and guest usually created by express contract, for as a rule it is based wholly upon the mere circumstance that one man happens to have an inn which is patronized by another, and the law implies whatever else is necessary to constitute the relation between them. (Anthon's Law Student, p. 57; *Willard* v. *Reinhardt*, 2 E. D. Smith, 148.) It is a relation, moreover, which cannot be defined with exactitude in matters of detail, for it may be one thing in a mining camp, or in the remote and sparsely settled portions of a country ; it may be another thing in the tavern by the rural wayside, and yet another in the modern urban palace called a hotel. Between the extreme of rugged simplicity on the

one hand and of palatial magnificence on the other there are
numberless gradations of service, attention, convenience and
luxury which must necessarily give the relation of innkeeper
and guest such flexibility as will render it adaptable to vary-
ing conditions and circumstances.    But underneath all these
differing conditions there is, of course, a basic legal principle
which governs the general relation of innkeeper and guest.
The innkeeper holds himself out as able and willing to enter-
tain guests for hire, and, in the absence of a specific contract,
the law implies that he will furnish such entertainment as the
character of his inn and reasonable attention to the conven-
ience and comfort of his guests will afford.    If the guest is
assigned to a room upon the express or implied understand-
ing that he is to be the sole occupant thereof during the time
that it is set apart for his use, the innkeeper retains a right of
access thereto only at such proper times and for such reasonable
purposes as may be necessary in the general conduct of the
inn or in attending to the needs of the particular guest.    If,
for instance, there should be an outbreak of fire, a leakage
of water or gas, or any other emergency calling for imme-
diate action in a room assigned to a guest, the innkeeper and
his servants must necessarily have the right to enter without
regard to the time of day or night and without consulting
the wish or convenience of the guest.    It is equally clear
that for the purpose of enabling the innkeeper to ful-
fill his express or implied contract to furnish his guest with
such convenience and comfort as the inn affords, he and
his servants must have such access to the room at all such
reasonable times as will enable him to fulfill his duty in that
behalf.    It is obvious that as to this general right of
entry no hard and fast rule can be laid down, for what would
be reasonable in a case where a room is occupied by two or
more guests, or where access to one room can only be had
through another, might be highly unreasonable where a sepa-
rate room is assigned to the exclusive use of a single guest.
It is also manifestly proper and necessary that an innkeeper
should have the right to make and enforce such reasonable

rules as may be designed to prevent immorality, drunkenness, or any form of misconduct that may be offensive to other guests, or that may bring his inn into disrepute, or that may be radically inconsistent with the generally recognized proprieties of life. To these reserved rights of the innkeeper the guest must submit. But the guest also has affirmative rights which the innkeeper is not at liberty to willfully ignore or violate. When a guest is assigned to a room for his exclusive use, it is his for all proper purposes and at all times until he gives it up. This exclusive right of use and possession is subject to such emergent and occasional entries as the innkeeper and his servants may find it necessary to make in the reasonable discharge of their duties; but these entries must be made with due regard to the occasion and at such times and in such manner as are consistent with the rights of the guest. One of the things which a guest for hire at a public inn has the right to insist upon is respectful and decent treatment at the hands of the innkeeper and his servants. That is an essential part of the contract whether it is express or implied. This right of the guest necessarily implies an obligation on the part of the innkeeper that neither he nor his servants will abuse or insult the guest, or indulge in any conduct or speech that may unnecessarily bring upon him physical discomfort or distress of mind. The innkeeper, it is true, is not an insurer of the safety, convenience or comfort of the guest. But the former is bound to exercise reasonable care that neither he nor his servants shall by uncivil, harsh or cruel treatment destroy or minimize the comfort, convenience and peace which the latter would ordinarily enjoy if the inn were properly conducted, due allowance being always made for the grade of the inn and the character of the accommodation which it is designed to afford.

Upon the facts of record, considered in the light of this very general statement of the rules which govern the relation of innkeeper and guest, it is clear that the defendants were guilty of a most flagrant breach of duty towards the plaintiff. As a guest for hire in the inn of the defendants the plaintiff

was entitled to the exclusive and peaceable possession of the room assigned to her, subject only to such proper intrusions by the defendants and their servants as may have been necessary in the regular and orderly conduct of the inn, or under some commanding emergency. Had such an emergency arisen, calling for immediate and unpremeditated action on the part of the defendants or their servants, in conserving the safety or protection of the plaintiff or of other guests, or of the building in which they were housed, the usual rules of decency, propriety, convenience or comfort might have been disregarded without subjecting the defendants to liability for mistake of judgment or delinquency in conduct; but for all other purposes their occasional or regular entries into the plaintiff's room were subject to the fundamental consideration that it was for the time being her room, and that she was entitled to respectful and considerate treatment at their hands. Such treatment necessarily implied an observance by the defendants of the proprieties as to the time and manner of entering the plaintiff's room, and of civil deportment towards her when such an entry was either necessary or proper. Instead of acting according to these simple rules the servant of the defendants forced his way into the plaintiff's room, under conditions which would have caused any woman, except the most shameless harlot, a degree of humiliation and suffering that only a pure and modest woman can properly describe. Not content with that, the servant castigated the plaintiff with opprobrious and offensive epithets, imputing to her immorality and unchastity, and, as a fitting climax to such an episode, ordered the plaintiff to leave the inn.

The majority opinion handed down by the Appellate Division, in which the dismissal of the complaint was sustained, seems to be based upon the theory that under the common law the innkeeper is not responsible for the safety of his guest for hire, and as authority for that view it cites *Calye's Case* (8 Coke's Rep. 63). All that appears to have been decided in that case is that the innkeeper is under an absolute duty to safely keep the chattels brought to the inn

and intrusted to him by his guest. There is a dictum in the opinion to the effect that if the guest be beaten in the inn, the innkeeper shall not answer for it; but under no reason-able construction could that language be held to mean that an innkeeper and his servants might assault a guest and yet not be liable. There may doubtless be many conditions under which a guest at an inn may be assaulted or insulted by another guest or by an outsider without subjecting the inn-keeper to liability, but if it ever was thought to be the law that an innkeeper and his servants have the right to willfully assault, abuse or maltreat a guest, we think the time has arrived when it may very properly and safely be changed to accord with a more modern conception of the relation of inn-keeper and guest. We think it would be startling, to say the least, to announce it as the law of this state that an innkeeper and his male servants may invade the room of a female guest at any hour of the day or night without her consent, in utter disregard of every law of decency and modesty, and that the necessity for such an extraordinary right lies in the rule that an innkeeper must be permitted to control every part of his inn for the protection of all his guests. Such a doctrine, so far from holding an innkeeper to a reasonable responsibility in the *quasi* public business which he is permitted to carry on, would clothe him with dangerous prerogatives permitted to no other class of men.

We conclude, therefore, that the invasion of the plaintiff's room in the defendants' inn and the treatment to which she was there subjected under the circumstances described in the complaint constituted a violation of the duty which the defendants owed to the plaintiff and for which they may be held liable if the facts alleged are established by proof. The complaint, although somewhat inartificial in form, sets forth all the facts necessary to such a cause of action. [The measure of liability, if any, will be purely compensatory and not puni-tive, the plaintiff's right to recover being confined to such injury to her feelings and such personal humiliation as she may have suffered.] (*Gillespie* v. *Brooklyn Heights R. R.*

*Co.*, 178 N. Y. 347.) That is the extent to which the defendants' liability may fairly be said to spring from their breach of duty. Any remedy beyond that which the plaintiff may seek to assert must be invoked in a different form of action. The gravamen of the action at bar is not the alleged slanderous defamation of the plaintiff, but the defendants' breach of the duty which it owed to the plaintiff and the injury which was directly caused thereby.

The precise question at issue, as we have suggested, seems to be one of first impression in this state. In a diligent search through the books we have found some cases that are analogous to the case at bar, but none that are identical. It has been held, for instance, that a tradesman is liable for an assault upon a customer committed by the tradesman's employee while acting within the scope of his employment (*Collins* v. *Butler*, 179 N. Y. 156), and the same rule was applied where such an employee had procured the unlawful imprisonment of a customer. (*Craven* v. *Bloomingdale*, 171 N. Y. 439.) In a very recent case this court decided that a common carrier is liable to a passenger for injury to his feelings caused by the insulting language of the carrier's employee; this liability being predicated upon a breach of the contract which obligated the carrier not only to transport the passenger, but to accord to him respectful and courteous treatment, and to protect him from insult from strangers and employees. (*Gillespie* v. *Brooklyn H. R. R. Co.*, *supra*.) There is the same dearth of direct authority in other jurisdictions. In England an innkeeper has been held liable for injuries suffered by a guest through a defect in the inn which existed because of the innkeeper's negligence; and the measure of the innkeeper's duty was held to be reasonable care. In Nebraska it was held that an innkeeper was liable for injury to a small boy who was a guest through the accidental discharge of a pistol in the hands of an employee, in a room not intended for guests, into which the lad had intruded. (*Clancy* v. *Barker*, 71 Neb. 83; reargument, id. 91.) The conclusion of the court in that case seems to have been based upon the theory that the innkeeper's

liability is similar to that of common carriers who have been held responsible for assaults or insults upon passengers, perpetrated by their employees while acting, not within the scope of their restricted authority, but within the apparent course of their employment, as in *Palmeri* v. *Manhattan Ry. Co.* (133 N. Y. 261). In the Nebraska case referred to, the Federal Circuit Court of Appeals (131 Fed. Rep. 161) differed from the state court upon the ground that the innkeeper's employee was not, at the time of the accident, doing anything that was within either the actual or apparent scope of his employment, and also for the further reason that a common carrier's liability in such cases cannot be applied to an innkeeper. In California there is one reported case in which the innkeeper was held liable for an assault upon a guest committed by employees who were acting within the scope of their employment (*Wade* v. *Thayer*, 40 Cal. 578), and in the same state in a recent case the innkeeper was held to be free from liability for an assault upon a guest by an employee who was not acting within the scope of his employment. (*Rahmel* v. *Lehndorff*, 142 Cal. 681.) In Missouri an innkeeper has been held liable for injuries to a guest resulting from an assault by an employee even where, as the report seems to indicate, the employee was acting willfully and wantonly rather than within the apparent scope of his employment (*Overstreet* v. *Moser*, 88 Mo. App. 72), and in Pennsylvania and Minnesota the courts have gone so far as to hold the innkeeper liable for assaults upon guests within the inn by others than the innkeeper or his servants. (*Rommel* v. *Schambacher*, 120 Pa. St. 579 ; *Curran* v. *Olson*, 88 Minn. 307.)

All these cases bear certain analogies to the case at bar, but none are authoritative for the precise principle is not involved. They have been cited because these analogies indicate, if they do not determine, that the innkeeper is not a lonely exception to the rule of *respondeat superior*, when a guest is assaulted or injured, under circumstances which would generally make other employers liable for the acts of their servants.

The judgments of the Appellate Division and the Trial Term should be reversed and a new trial granted, with costs to the appellant to abide the event.

CULLEN, Ch. J., GRAY, VANN, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Judgments reversed, etc.