# Florence Hotel Co. *v.* Bumpas.

### Damages for Breach of Duty as Innkeeper.

(Decided May 13, 1915.   Rehearing denied June 30, 1915.
69 South. 566.)

1. *Innkeepers; Injury; Damages.*—In an action by a guest at a hotel under a complaint showing a wrongful invasion of plaintiff's room, a violation of his right of privacy, and humiliation suffered on account of the removal of his effects therefrom, damages for humiliation and indignities may be awarded.

2. *Same; Right of Guests; Ejection.*—Where one has shown himself admitted as a guest in a hotel, the burden is on the hotel keeper to justify the ejection of such an one.

3. *Same; Evidence.*—The exclusion of evidence that the manager of the hotel had had the house detectives hunting for plaintiff was rendered harmless where the manager was permitted to state without objection that he had made all reasonable efforts to locate the plaintiff.

4. *Same.*—The exclusion of a letter intended by the hotel keeper for the guest, but which was never received or opened by the guest, was harmless.

5. *Appeal and Error; Review; Verdict; Amount.*—Where the trial court has refused to disturb the verdict on account of the amount of damages recovered, the judgment will not be reversed for excessive damages unless the amount is so excessive or so inadequate as to indicate prejudice, passion, partiality or corruption on the part of the jury.

APPEAL from Jefferson Circuit Court.

Heard before Hon. E. C. CROW.

Action by J. L. Bumpas against the Florence Hotel Company. Judgment for plaintiff, and defendant appeals. Transferred from Court of Appeals under section 6, p. 449, Acts 1911. Affirmed.

The complaint is as follows:

Count 1. "Plaintiff claims of defendant corporation the sum of $—— damages, for that * * * defend ant was engaged in the business of running and operating a public hotel for the accommodation of guests in

[Florence Hotel Co. v. Bumpas.]

Birmingham, Ala., and plaintiff was on said date a guest at said hotel, and he had the use and control of a private room as said guest; and on said date defendant's agent or servant, while acting in the line and scope of his employment, wrongfully entered plaintiff's room and took therefrom the baggage or personal property belonging to plaintiff, and as a proximate consequence of said act, plaintiff was greatly humiliated and annoyed."

Count 2. Same as 1, down to and including the words "guest at said hotel," and adds: "As such guest defendant owed him the duty of treating him in respectful and gentlemanly manner, but on said date defendant breached said duty, in this: That defendant's agents or servants, while acting in the line and scope of their employment, wrongfully entered plaintiff's room and took therefrom all his baggage and wearing apparel, and wrongfully disturbed plaintiff by calling him at or near midnight, over the telephone connected with said building and said room, and demanded that he come to the office; and plaintiff alleges that he was insulted and humiliated by said act of defendant's said agents or servants, and was damaged as aforesaid."

Count 3. Same as 2, except that it alleges that defendant's servants or agents willfully or intentionally committed said trespass and insulted said plaintiff as aforesaid.

F. E. BLACKBURN, for appellant.

L. J. Cox, for appellee.

GARDNER, J.—Suit by appellee against appellant for recovery of damages alleged to have been sustained by the plaintiff while a guest in the hotel operated by

defendant, on account of the unlawful conduct of the agents or servants of the defendant company while acting within the line and scope of their authority.

The complaint contained three counts. They each state an action on the case, for breach of a duty imposed by law, and growing out of the relation of innkeeper and guest.—Beale on Innkeepers and Hotels, §§ 281, 282; *Stanley v. Bercher,* 78 Mo. 245; 16 A. & E. Ency. Law (2d Ed.) 526. It is clear that each count proceeds upon the principle of respondeat superior in imputing liability to the defendant corporation, as neither charges any corporate act, but charges wrongful conduct on the part of defendant's agents or servants while acting within the line or scope of their employment.—*Billingsley v. Nashvile, C. & St. L. Ry.,* 177 Ala. 342, 58 South. 433; *So. Ry. Co. v. Hanby,* 166 Ala. 641, 52 South. 334; 7 Labatt, M. & S. (2d Ed.) § 2522. The case of *Cen. Ga. Ry. Co. v. Freeman,* 140 Ala. 581, 37 South. 387, cited by apellant's counsel, is therefore without application here.

"The obligation of an innkeeper to care for his guests is imposed by law, and necessarily results from the admittance of the guest to the inn. There is no need of a contract between the parties. As soon as the relation of host and guest is established, the rights and duties of both parties to the relation are at once fixed." —Beale on Inkeepers and Hotels, § 111.

"In the absence of a special contract, as is authorized, the rights of guests, and the liability of the keeper, remain as at common law.—6 Mayf. Dig. 443.

An interesting and instructive discussion of the respective rights and duties and responsibilities growing out of this relation, as at common law, is found in the opinion of the court of last resort of the state of New York

[Florence Hotel Co. v. Bumpas.]

in the case of *De Wolf v. Ford,* 193 N. Y. 397, 86 N. E. 527, 21 L. R. A. (N. S.) 860, 127 Am. St. Rep. 969, from which we quote the following: "The innkeeper holds himself out as able and willing to entertain guests for hire, and, in the absence of a specific contract, the law implies that he will furnish such entertainment as the character of his inn, and reasonable attention to the convenience and comfort of his guests will afford. If the guest is assigned to a room upon the express or implied understanding that he is to be the sole occupant thereof during the time that it is set apart for his use, the innkeeper retains a right of access thereto only at such proper times and for such reasonable purposes as may be necessary in the general conduct of the inn or in attending to the needs of the particular guest."

After stating that no "hard and fast" rule can be laid down as to what in every case would be reasonable conduct on the part of the innkeeper in claiming access to the room of the guest, and recognizing his right to do so in the enforcement of reasonable rules and regulations for the proper conduct of his business, and in certain emergencies, the opinion proceeds: "To these reserved rights of the innkeeper the guest must submit. But the guest also has affirmative rights which the innkeeper is not at liberty to willfully ignore or violate. When a guest is assigned to a room for his exclusive use, it is his for all proper purposes and at all times until he gives it up. This exclusive right of use and possession is subject to such emergent and occasional entries as the inkeeper and his servants may find it *necessary* to make in the reasonable discharge of their duties; but these entries must be made with due regard to the occasion, and at such times and in such manner as are consistent with the rights of the guest. One of

the things a guest for hire at a public inn has the right to insist upon is respectful and decent treatment at the hands of the innkeeper and his servants. That is an essential part of the contract, whether it is express or implied. This right of the guest necessarily implies an obligation on the part of the innkeeper that neither he nor his servants will abuse or insult the guest, or indulge in any conduct or speech that may unnecessarily bring upon him physical discomfort or distress of mind."

It was held in that case that the invasion of the plaintiff's room and the insulting treatment she was subjected to was a violation of the duty owing to plaintiff, and entitled her to recovery for her injured feelings and humiliation. See, also, 22 Cyc. 1080, and *Clancy v. Barker,* 131 Fed. 161, 66 C. C. A. 469, 69 L. R. A. 653, for an interesting review of the authorities.

(1)   It is insisted that the complainant claims damage only for mental anguish, and under the authority of *W. U. T. Co. v. Wright,* 169 Ala. 104, 53 South. 95, where no actual damages are alleged, a cause of action is not stated. We think it clear that what is here said, and the authorities cited, will disclose that the *Wright Case* is not applicable under the averments of the complaint in this case, where each count shows a wrongful invasion of the plaintiff's room, a violation of his rights, and humiliation suffered on account of the wrongful conduct charged. These are elements of actual damage. In *L. & N. Co. v. Hine,* 121 Ala. 234, 25 South. 857, it was said: "Humiliation and indignity, if suffered by him, are also elements of actual damages. Such damages may arise from a sense of injury and outraged rights engendered by the ejection alone, with-

out regard to the manner in which it was effected, and though done through mistake."

It therefore appears that neither count of the complaint was subject to the demurrer interposed thereto, nor was there any error in refusing the affirmative charge requested by defendant.

(2)    The evidence on the part of the plaintiff tended to show that during his absence from his room his suit case was removed by the manager of the hotel and carried to the hotel office, and that on the night of January 2d he found a note on the dresser in his room asking him that he call up the clerk. When he called, the clerk was not in; and word was left, to the effect that plaintiff would see the clerk the next morning. About 11:30 o'clock that night the clerk called the plaintiff, who protested at being disturbed after he had retired. The clerk said he wanted to see plaintiff about the payment of his bill, as he had been there several days and his baggage was not considered of sufficient value for payment of same, stating that the manager of the hotel had removed his suit case to the office, where he could get it on paying his bill; that they had taken the suit case, so that plaintiff would have to come to the office for it. Plaintiff testified that the clerk seemed angry and talked in a rude manner; that when he paid his bill the next morning the same was receipted, and printed on the bill were the words, "All bills payable weekly," etc. It was without dispute that plaintiff was accepted as a guest on December 31, 1913, without any demand for payment in advance or his ability to pay being in any manner questioned, and that his baggage consisted of one suit case containing his wearing apparel. When he registered the clerk had the bell boy carry the suit case to the room assigned him. Plaintiff further testi-

fied that he was ready, willing, and able to pay his bill at all times. The heading of the hotel register had the following words printed thereon: "Guests without baggage are required to pay in advance."

There was also evidence tending to show that, when plaintiff paid his bill on the morning of January 3d, the manager used language indicating that plaintiff had evaded the agents or officers of the hotel; that in fact they became engaged in a quarrel. Plaintiff explained that he did not call for mail at the clerk's desk, because he expected none, and that he remained around the lobby or in his room, as did the other guests. This record nowhere discloses that plaintiff had been guilty of any conduct authorizing his ejection from the hotel or justifying his submission to insult or humiliation. The defense seem to contend, however, that those in charge of the hotel were so justified because of the fact that plaintiff never visited the hotel office or called for any mail, and they were unable to locate him when they made an effort to do so, and upon the further fact (and this seems to have largely influenced their conduct toward him) that plaintiff had taken meals at the Florence Cafe, adjoining the Florence Hotel, and had the meal tickets charged to his room, No. 341. It is difficult to understand the anxiety of the hotel company as to this feature, however, as the undisputed evidence shows that the cafe was entirely separate and distinct from the hotel, and had no connection therewith, and the hotel was not liable for any such indebtedness. This defense was based upon the theory, as we assume, that on account of inability to locate plaintiff their suspicion was aroused, and they had the right to eject him for nonpayment of his bill.—22 Cyc. 1075; Beale on Innkeepers and Hotels, c. 9. The case does not require a

treatment of this question further than a statement of the general rule that when one has shown himself admitted as a guest the burden is on the innkeeper to justify ejectment of him.—Beale, supra, § 101.

(3) If the question (objections to which were sustained) embraced in assignments of error 9, 10, and 11, should be conceded as calling for evidence material and relevant, we are of the opinion that no reversible error could be predicated upon this action of the court. The defendant made no effort to show by the house detective and page what in fact they did, and the witnesses for defendant (including the clerk) were permitted to testify without objection, and without dispute, that they had tried to find plaintiff, but were unable to do so; and the manager testified that he "went to his room a number of times, day and night," and was unable to find him there, "or anywhere else about the hotel," or to get him over the 'phone in his room. The matters defendant expected to elicit by the answer (as disclosed by statement of counsel to the court), to the effect that the witness had the house detective to look for the plaintiff, etc., really amounted only to directions given by the witness, and were such as should have been proven by the detective himself as to what he did; and this would apply also to the clerks. As previously stated, the witness manager had testified without objection to the effect that he had made all reasonable efforts to locate plaintiff in the hotel.

(4) There was no reversible error in excluding the letter (assignment of error No. 8), which was shown never to have been received, or read, or shown to plaintiff. In addition, the writing of the letter and placing it in the box at the hotel for the plaintiff was proven without objection, and we are unable to see how the

[Florence Hotel Co. v. Bumpas.]

failure to show the contents of the letter to the jury could have prejudiced any right of the defendant, as its contents disclose that it was, to say the least of it, far from complimentary and pleasant in tone.

(5)   The jury returned a verdict in favor of the plaintiff in the sum of $150. We have not here undertaken to set out all the evidence, but it has been carefully reviewed. In cases of this character, even the trial court will not set aside the verdict merely because, in its opinion, the jury gave too much or too little; and when the trial court has refused to disturb a verdict on account of the amount recovered, the appellate court is very reluctant to substitute its judgment for that of the jury and the court below. The rule is that, in cases of this character, a judgment will not be reversed on this ground alone, unless the amount is so excessive, or so grossly inadequate, as to be indicative of prejudice, passion or partiality, or corruption on the part of the jury.—*Cen. Ga. Ry. v. White,* 175 Ala. 60, 56 South. 574.  In the light of the above-stated rule, and upon careful consideration of all the evidence, we are unwilling to say that a new trial should be granted upon this ground, or that the verdict is so excessive as to call for any action by this court.

No reversible error appearing, the judgment of the court below is affirmed.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and SAYRE, JJ., concur.