175 So. 412

## ANDERSON v. TADLOCK.

### 4 Div. 297.

Court of Appeals of Alabama.
June 8, 1937.

Cope & Cope, of Union Springs, for appellant.

T. S. Frazer and Andrews & Andrews, all of Union Springs, for appellee.

SAMFORD, Judge.

There were four counts in the complaint; two counts claiming damages for trespass to realty, and two counts claiming damages for trespass to personal property. And in each count there was a claim for punitive damages.

It is claimed in all four counts that the defendant, acting by and through his duly constituted agent, who at the time complained of was acting within the line and scope of his employment, committed the acts of trespass to the realty and to the personal property in the manner set out in the complaint.

The testimony for defendant is to the effect that at the time the contract was executed there was a balance due on same of $41.50, and that on the date the property was taken by defendant's agent there was still due the sum of $23.50, and that the payments were in default. On the contrary, there was evidence tending to prove that the entire amount had been paid.

The evidence, further tended to prove that the plaintiff resided with her husband and minor children in a house located within the city limits of Union Springs, Ala., rented by her, and that the articles of personal property purchased from the defendant were stored in said dwelling house;

that plaintiff, because of ill health, left her house some time during the third week of October, 1935, at which time her husband, under her direction, nailed up the door to the house and closed the windows.

There was evidence tending to prove that the defendant sent his agent with instructions to repossess the personal property, and that the agent, in carrying out his instructions, took a hammer, broke open the door, loaded the furniture on a dray, and carted it away, without the knowledge or consent of the plaintiff, and that plaintiff had never recovered the property from the defendant.

It is now a firmly established rule in this jurisdiction that under the doctrine of respondeat superior, the master is liable in damages for the torts of the servant committed while acting within the line and scope of his employment. This rule was announced in Gilliam v. South & N. A. R. R. Co., 70 Ala. 268, and has been followed consistently by our Supreme Court, and this court, in suits where the wrongs complained of have been committed by an agent within the line and scope of his employment. Alabama Power Co. v. Bodine, 213 Ala. 627, 105 So. 869.

This rule also applies where the wrong complained of was intentionally, willfully, or maliciously done in such manner as to authorize a recovery for punitive damages. Bessemer Coal, Iron & Land Co. et al. v. Doak, 152 Ala. 166, 44 So. 627, 12 L.R.A. (N.S.) 389. While in the earlier decisions, both in England and in many of the United States, a different rule has obtained, now in almost all jurisdictions it is well settled that the master is liable for the willful or malicious acts of the servant done in the course of his employment and within its scope, although the acts were not expressly ratified by the master or authorized by him. Postal Telegraph Co. v. Brantley, 107 Ala. 683, 18 So. 321. Authorities collated 39 Corpus Juris, (1487) (7), notes 72 and 73.

The evidence being in conflict on the issues involved, the court properly refused to give at the request of the defendant charges instructing a verdict as to each of the counts separately.

In a suit in trespass for taking goods, if the taking is merely unlawful, the measure of damages is, generally, the value of the goods, or amount of injury done to them, as the case may be, with interest to the date of judgment; but, if the taking is perpetrated in a rude, wanton, reckless, or insulting manner, or is accompanied with circumstances of fraud, malice, oppression, or aggravation, or even with gross negligence, the party injured is entitled to receive exemplary or punitive damages. Burns v. Campbell, 71 Ala. 271.

This, under the evidence in this case, was a question for the jury, and was given to them under a fair instruction by the court. Charges requested by the defendant for an instructed verdict as to punitive damages were, therefore, properly refused.

Mr. Dan Mason, who was the landlord of the plaintiff, and who had testified that he rented the property to the plaintiff and was present at the time Mr. Blue, the agent of the defendant, was taking the property out of the house, was asked on cross-examination by the defendant: "Prior to this time had you ever had any misunderstanding with Mr. Anderson (the defendant) about retaining property for your rent where he had a retainer-title mortgage on it?" Objection by plaintiff to this question was sustained. The question called for matters res inter alios acta and, therefore, there was no error in this ruling of the court.

The plaintiff was permitted to prove, over the objection and exception of defendant, the number of children she had, and the state of her health just prior to, at the time of, and subsequent to the trespass complained of. This evidence was admissible on the question of punitive damages, as tending to show the helpless condition of the plaintiff at the time of the breaking of the house and the taking of the furniture, and to aid the jury in assessing proper damages in this case. The court committed no error in these various rulings. A person holding a retention-title note to personal property, which is in default, has the right to take that property where he finds it, provided he does so in a lawful manner; but if it transpires that nothing is due on the note, he has no right to the possession, and if he takes it, he does it at his peril, and if the taking is from a weak and defenseless woman with three little children, the jury should be advised of that fact in determining what the punishment should be.

The introduction of receipts for payments made by the plaintiff, or under her direction, to the defendant, or his agent,

were properly admitted in evidence on the question of whether or not anything was due on the paper. The face of the paper is for $41.50; whereas, the receipts offered in evidence aggregate $45. It was for the jury to say, under the facts in this case, whether or not there was anything still due on the retention-title notes. True, the plaintiff testified: "I reckon I owed him a balance on that furniture." But this is not conclusive against her; she was just an ignorant woman relying on the installment furniture dealer to keep the account; he made a claim and there is no evidence that she ever added up the receipts or the amounts which she seems to have regularly paid him before the birth of her last child interrupted the continuity of the payments.

It is insisted that the motion for a new trial should have been granted on account of the fact that the verdict was excessive. The appellant, by this ground of the motion, is asking us to overrule the verdict of the jury and the judgment of the judge trying the case. The judge and the jury had all of the parties before them, they heard the witnesses, there is no evidence of undue prejudice, and the verdict is not so excessive as to warrant this court in setting it aside.

We find no error in the record, and the judgment is affirmed.

Affirmed.