**Glen L. WOOD, Plaintiff,**

v.

**HOLIDAY INNS, INC., a Tennessee corporation, et al., Defendants.**

**Civ. A. No. 981–E.**

United States District Court,
M. D. Alabama, E. D.

Jan. 17, 1974.

---

Joseph D. Phelps, Albert P. Brewer, Montgomery, Ala., Thomas J. Gardner, III, Tupelo, Miss., for plaintiff.

Robert D. Norman, William C. Wood, Jr., Birmingham, Ala., for Holiday Inns, Inc..

W. F. Horsley, Opelika, Ala., for Gulf Oil Corp.

Robert A. Huffaker, Montgomery, Ala., for Jessie Goynes and Interstate Inns, Inc.

## ORDER

VARNER, District Judge.

### STATEMENT OF FACTS

This cause arose from circumstances surrounding denial of credit to Glen L. Wood, a guest of a franchised Holiday Inn in Phenix City, Alabama. The Defendant Goynes was the night clerk on duty at the local Holiday Inn and was a resident of the State of Alabama. The local Holiday Inn was not owned or operated by Defendant, Holiday Inns, Inc., but was franchised to and owned and operated by the Defendant, Interstate Inns, Inc., a South Carolina corporation. Interstate Inns held a franchise agreement from the Defendant, Holiday Inns, Inc., a Tennessee corporation, to operate the local Holiday Inn in Phenix City and to use the name, Holiday Inn, and policies of Holiday Inns, Inc., in such operation for a small percentage of the profits. The Gulf Oil Corporation, a Pennsylvania corporation, by virtue of a contract with Holiday Inns, Inc., was authorized to handle all credit transactions of all Holiday Inns, whether owned by Holiday Inns, Inc., or by some franchise, all credit being established with Gulf Oil, the bills being charged to and paid to Gulf Oil, and Gulf Oil paying the various inns the amounts due them in consideration of an assignment of said credit and a small percentage of the credited items. This Court has jurisdiction by virtue of diversity of citizenship and the requisite jurisdictional amount.

On the evening before the morning in question, Plaintiff checked into the Defendant Inn at Phenix City and submitted his Gulf credit card for the purpose of having it imprinted on a credit memorandum of the motel. After the imprint was taken, the card was returned to him, and he retired. While the evidence was in conflict as to the transactions between the Plaintiff and the Defendant Goynes on the following morning, there was evidence from which the jury might have found, and apparently they did find, the following: That, at 5:00 A.M. the following morning the Defendant Goynes called the Plaintiff's room, awakened the Plaintiff from his repose, and informed him that he would like to obtain the Plaintiff's credit card for the purpose of making an imprint on a credit memorandum of the motel as

the imprint made the night before was indistinct, and another imprint was needed; that after some conversation it was agreed that Goynes take the card, secure the imprint, and return it within a few minutes to the Plaintiff; that some thirty minutes later, Plaintiff, not having resecured his card and feeling that for some purpose someone had fraudulently secured his card, the Plaintiff dressed and went to the front desk and was informed by the Defendant Goynes that his credit had been revoked and that Goynes had telegraphic authority from National Data Processing, Inc., a computerizing service for Defendant Gulf Oil, to pick up Plaintiff's card and terminate his credit. It was conceded that Goynes obtained the credit card and asked Plaintiff to arrange to pay his bill in cash.

The credit manager of Gulf Oil testified that, on the previous day, he had reviewed the credit file of the Plaintiff; had found that the Plaintiff had been charging in ever-increasing amounts on his Gulf credit card; that he had during the current month paid to Gulf a substantial bill and charged to Gulf another bill which charges almost equaled the Plaintiff's total monthly income; that in the last three months the Plaintiff had paid his bill more than thirty days after the time the bill was sent to him; and that these facts caused him to suspect that the Plaintiff would soon be unable to pay his Gulf account. He, therefore, ordered the credit terminated and the card revoked or picked up.

The method for terminating the credit and picking up the card was that, on order of Gulf, National Data Processing sent out a communication to all Gulf agents and all desk clerks of Holiday Inns, in short, those most likely to come into contact with such credit cards, a list of all credit cards revoked and asked them to secure possession thereof for Gulf for a reward to be paid by Gulf. Suggestions as to how such cards might tactfully be repossessed had been sent out by Gulf, and there was no evidence that Gulf authorized use of rudeness or false pretenses in securing the credit cards.

After repossession of the card, the Defendant Goynes was paid by Gulf a reward for the same.

There was evidence that the credit file of Gulf included information received from a credit bureau in Tupelo, Mississippi, showing that the Plaintiff had a good credit rating and no derogatory matter showed in the report from Tupelo. Other information contained in the Gulf credit file included information given Gulf by the Plaintiff when he made application for credit and times, amounts, and dates of charges and credits to said account received from Gulf's own credit records.

The Plaintiff brought suit against Goynes, Interstate Inns, Inc., Holiday Inns, Inc., and Gulf Oil Corporation and recovered judgments of $25,000.00 actual damages against Gulf, $25,000.00 punitive damages against Interstate Inns, Inc., and Jessie Goynes, and $10,000.00 punitive damages against Holiday Inns, Inc. The jury further found that Defendants Goynes and Interstate Inns should have judgment over against Gulf Oil for the $25,000.00 punitive damages, the liability which they incurred in executing the alleged agency of Gulf in revoking the credit card.

All Defendants made motions for judgments notwithstanding the verdict. Defendants Goynes and Interstate made a motion for new trial, and the Plaintiff made a motion for a judgment in conformance with the verdict. All of these motions are now submitted to the Court with briefs of the parties.

### LIABILITY OF GULF

The cause was submitted against Gulf Oil Corporation for violation of the Fair Credit Reporting Act on one of two alternative theories as follows:

First, that Gulf, a credit reporting agency, did not use all reasonable precautions to avoid making a false credit report on Glen L. Wood to Interstate Inns, Inc. The theory of the falsity was

that his credit card should be picked up when, in truth and in fact, his credit was still good. More fully, the theory was that the credit manager, having considered Wood's monthly income and compared it with known charges to Gulf, concluded that Wood was spending almost all of his income with Gulf and Holiday Inn and that he could not possibly be expected to continue to pay his bills; that this appraisal of Wood's credit standing was false in that it failed to encompass the fact that a large part of Wood's credit with Gulf was composed of obligations of his employer; and that his bills had been paid without undue delay over a substantial period of time.

The Defendant Gulf Oil contended that no false credit report was involved; that Gulf learned accurately that Wood's monthly charges were almost exceeding his monthly income; that his bills for the preceding three months had not been paid with desired promptness; and that his credit was cancelled on that basis. Gulf Oil insists on their right to cancel credit where circumstances show a doubt. They also insist that they made no report to anyone but simply revoked Wood's credit with themselves in the only way they have to do so.

While Gulf's decision to revoke the Plaintiff's credit may not have been good public relations or even good business judgment, while the opinion may not have been justified if all facts about Mr. Wood had been known, and while Mr. Wood apparently had knowledge which, when conveyed to the Gulf credit manager, caused a renewal of the credit of Mr. Wood, this Court is of the opinion that there is no cause of action for a credit manager's failing to extend credit. A creditor, by the very nature of his business, must be able to extend or deny credit based on any information which may have any bearing on the consumer's credit. Jennings v. American Express Co., (CCA 5, 1964) 338 F.2d 22; Jordan v. J. C. Penney Co., (1966) 114 Ga.App. 822, 152 S.E.2d 786; City Stores Co. v.

Henderson, (1967) 116 Ga.App. 114, 156 S.E.2d 818.

■ Clearly, Gulf did make the determination to terminate the credit, and they terminated Mr. Wood's credit. They did not, as such, make any credit report to anyone else. The credit to be extended or denied in this case was by Gulf, not by Goynes or by Interstate. The only information given Goynes by Gulf was the directive that nothing more should be charged to Gulf by Mr. Wood, and this information was given for the purpose of protecting Gulf from what their credit manager considered to be a bad credit risk. Gulf was, therefore, not a credit reporting agency as defined by the Act and as referred to in 15 U.S. C. § 1681e(b) since Gulf was not furnishing information to another user of credit information but was using, in its own credit business, information gathered from its own files, and it, therefore, could not be liable as a reporting agency.

The other theory of liability of Gulf under the Credit Reporting Act is that Gulf is liable under 15 U.S.C. § 1681m as a user of a credit report for damages resulting from its having failed to report to the consumer (Mr. Wood) the name and address of the reporting agency making the report containing information upon which the denial of credit for personal, household or family purposes was wholly or partially based.

■ Gulf takes the position that it could not be liable under this theory since it denied credit for business use, not for personal, household or family purposes, since Mr. Wood testified that he was on a business trip, and his expenses were purely for business. It further takes the position that Mr. Wood was damaged in no way by its failure to report the name and address of the favorable credit informer, that is, the credit bureau in Tupelo, Mississippi, and, further, that it could not be liable as a "user" as described in the statute as the information upon which credit

was revoked was all developed from the credit files of Gulf itself, and information from other sources was not considered in any way in making the adverse determination.

This Court is of the opinion that there is no evidence offered in this case to substantiate any theory that Mr. Wood was damaged by a failure of a user of a credit report to report to Mr. Wood "the name and address of the reporting agency making the report containing information upon which the denial of credit for personal, household or family purposes was wholly or partially based."

█ No contention has been made and there is no evidence to establish that Gulf ever purported to be or acted as an innkeeper, and it is, therefore, clear that Gulf is not liable under the theory of an innkeeper's duty to its guests in this case. In any event, Gulf could not be responsible vicariously for the actions of Goynes since Goynes was not under any theory supported by substantial evidence their agent. The transaction between Goynes and Gulf involved a promise for an act, that is, the promise of a reward for the recovery of the credit card. There was no supervision or inspection exercised by Gulf. Gulf had no control over Goynes or over the premises where the credit card was revoked. Gulf furnished no equipment used by Goynes. Goynes was compensated by a reward upon completion of his job—a reward equally available to others who might have obtained the credit card for Gulf. Gulf did not hire Goynes, and it had no power to fire him. Suggestions routinely sent out by Gulf or by Holiday Inns, Inc., did not amount to reservation of control of how credit cards would be revoked. This Court is, therefore, of the opinion that Goynes, in repossessing the credit card for Gulf, was acting as an independent contractor and not as an agent and that, therefore, Gulf cannot have been legally held to be vicariously liable for the acts of Goynes. See Birmingham Post Co. v. Sturgeon, 227 Ala. 162, 149 So. 74; Powell v. Dry Goods Co., 5 Cir., 179 F.2d 677; Motor Terminal & Transport. Co. v. Simmons, 28 Ala.App. 190, 180 So. 597; Taylor v. General Refrigeration Sales Co., 231 Ala. 469, 165 So. 572; Greenwald v. Russell, 233 Ala. 502, 172 So. 895; Lowe v. Poole, 235 Ala. 441, 179 So. 536; Solmica of Gulf Coast, Inc. v. Braggs, 285 Ala. 396, 232 So.2d 638.

This Court, therefore, concludes that the Defendant Gulf Oil could not be legally responsible for the damages done the Plaintiff under any theory set out in the pleadings or the proof in this cause and that, therefore, the motion of the Defendant Gulf for judgment notwithstanding the verdict against it on the complaint should be granted.

## INDEMNITY

This Court is further of the opinion that the motion of Gulf for a judgment notwithstanding the verdict on the cross-claim should also be granted for each of two reasons. First, as hereinabove discussed, Goynes was not the agent of Gulf when he took steps to revoke the credit card and, second, as hereinafter discussed, even if Goynes were Gulf's agent in revoking the credit card, a master is not liable for indemnification of an agent for damages resulting solely from the agent's own fault.

█ It is clear that under Alabama law an agent is entitled to reimbursement or indemnification for any amounts that he has been required to pay for his principal in performance of his agency. The theory is that the law implies a promise by a master directing a servant to do an act in the master's behalf, to indemnify such servant for damages proximately resulting from execution of the agency or expenses incurred by him in order to consummate what he was directed to do. Indemnity is required when conditions are such as to render it inequitable for the master not to make such indemnity. Lauderdale v. Peace Baptist Church of Birmingham, 246 Ala. 178, 19 So.2d 538; Moore v. Appleton, 26 Ala. 633; Brower

v. Fenner and Beane, 237 Ala. 632, 188 So. 240.

The Defendants Goynes and Interstate Inns vigorously assert that, under the doctrine of Anderson v. Tadlock, 27 Ala.App. 513, 175 So. 412, and Hagood v. Knight, 257 Ala. 64, 57 So.2d 616, the master or principal is liable over to indemnify his servant or agent when the wrongful act for which the agent is legally responsible was unnecessary for execution of the agency. This Court cannot agree that those cases make any such assertion acceptable. The Court in *Hagood,* supra, simply held that a principal is liable to a third party for his agent's fraud committed without the principal's participation or consent while the agent is acting within the scope of his authority. The Court in *Anderson,* supra, again considered only the master's liability to a third party for a wrong done by the servant in a rude, wanton, reckless, or insulting manner and did not consider the question of indemnification of the master to the servant for this wrong. As early as 1855, the Supreme Court of Alabama in Moore v. Appleton, supra, refused to grant indemnity to an agent for damages he was required to pay because of execution of his agency within the scope of his employment but in a wrongful manner,

" * * * whenever it appears that the act of the agent was manifestly illegal in itself. For example, if A employ B to assault C, and B thereupon does assault C, and is subjected to damages therefor, B cannot recover such damages from A: the act of B being clearly illegal in itself, the law implies that he knew it to be so, and therefore will not enforce his claim to indemnity." 26 Ala. at p. 639.

██ The pertinent principle under which a principal or master has a duty to indemnify a servant or agent is set out in the Restatement of Agency Second in § 438, in pertinent part, as follows:

"(2) In the absence of terms to the contrary in the agreement of employ-

ment, the principal has a duty to indemnify the agent where the agent

"(b) suffers a loss which, because of their relation, it is fair that the principal should bear."

The Restatement further recognizes that it may not be fair that the principal indemnify the agent for the damages accruing to the agent because of the agent's own fault in § 440 as follows:

"Unless otherwise agreed, the principal is not subject to a duty to indemnify an agent:

"(a) for pecuniary loss or other harm not of benefit to the principal, * * * resulting solely from the agent's negligence or other fault."

In the absence of an agreement to the contrary, an agent has no legal right to indemnity from his principal for damages suffered by reason of his own fraud, misconduct or other tort even though the wrong was committed within the scope of the agent's employment. Guirney v. St. Paul, M. & M. R. Co., 43 Minn. 496, 46 N.W. 78; American Auto Ins. Co. v. Penn Mut. Indem. Co., 3 Cir., 161 F.2d 62.

This Court is, therefore, of the opinion that there is no evidence or law justifying the recovery of the Defendants Goynes and Interstate Inns against Gulf for indemnity for damages, if any, assessed against them for the alleged wrong done to the Plaintiff.

## HOLIDAY INNS, INC.

██ The Plaintiff contends that the Defendant, Holiday Inns, Inc., is liable vicariously as the principal of Goynes for Goynes' alleged violation of the innkeeper's duty not to mistreat or abuse guests and not to arbitrarily subject guests to offensive and insulting conduct. If Goynes were the agent of the innkeeper, Holiday Inns, Inc., acting in the line and scope of his authority when he repossessed the credit card from Plaintiff, the jury may have found that the Defendant, Holiday Inns, Inc., should have been punished for said act.

The Defendant, Holiday Inns, Inc., insists that there was no substantial evidence to justify a finding that Goynes was the agent of Holiday Inns, Inc., or that Holiday Inns, Inc., was actually an innkeeper under the circumstances of this case. The Plaintiff, in attempting to establish the agency relationship, relied heavily upon the fact that Holiday Inns, Inc., maintained a franchise agreement with its independently-owned franchisees, furnished substantial literature as to how the Holiday Inn should be maintained and what services should be offered guests, and had inspectors periodically inspect the various franchised Holiday Inns. However, it is undenied that Holiday Inns had no right to control, and no control over, Goynes when he received the credit card. They did not hire Goynes and could not fire him and had no direct dealings with him whatsoever. They owned no interest in the premises where Goynes was employed and no interest in the business at which he was employed except a right to a small percentage of the profits while their name and business practices were followed. The Defendants offered overwhelming evidence that Holiday Inns, Inc., insofar as the particular local Inn was concerned, maintained only a franchise agreement with Interstate Inns whereby Holiday Inns, Inc., authorized the local Inn to operate as a Holiday Inn, using the name, standards and policies of Holiday Inns in operating the local Inn, benefiting from an opportunity of buying certain supplies from corporations associated with Holiday Inns, Inc., enjoying the services of Holiday Inns, Inc., in referrals of guests from other Holiday Inns, and paying to Holiday Inns, Inc., a small percentage of its profits in compensation for the services received by it. The franchise agreement in evidence contains a statement that Interstate Inns desires to provide services to the traveling public in accordance with the high standards established by Holiday Inns and its system of operation. It is for this reason alone that inspectors came by the motel involved.

These inspectors do not control inn operation but only provide the service for inn operators of pointing out areas where the services provided to the traveling public by the inn can possibly be improved. This is a service for which Interstate Inns pay so that they will continue to operate first-class inns. The inspectors exert no right of control over, and do not have any authority to direct actions of, employees of a franchised inn. Any reports of the inspectors would be made to the innkeeper as suggestions and not to employees as orders.

An agent is "a person who undertakes to transact some business * * * for another by the latter's authority". BALLENTINE'S LAW DICTIONARY, 3rd Ed., p. 50. Under the evidence in this case, neither Interstate Inns, Inc., nor Jessie Goynes was operating the business of Holiday Inns, Inc. They were transacting the business of Interstate Inns and Gulf.

There was no joint enterprise between Holiday Inns and Interstate Inns as there was no agreement to share losses, if any. In re Owl Drug Co., D.C., 12 F. Supp. 439; Hyman v. Regenstein, 5 Cir., 258 F.2d 502, cert. den. 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575.

This Court is, therefore, of the opinion that there was no substantial evidence that Goynes was an agent of Holiday Inns, Inc., when he revoked the credit card of the Plaintiff and that there was no substantial evidence to support the verdict against Holiday Inns, Inc. The verdict against Holiday Inns, Inc., should, therefore, be set aside, and the motion for judgment notwithstanding the verdict of Holiday Inns, Inc., should be granted.

## INTERSTATE INNS AND GOYNES

The Plaintiff's case against the Defendants Goynes and Interstate is based upon the theory that an innkeeper, Interstate Inns, as well as its agent, Jessie Goynes, is liable for an act of its agent, if that agent mistreats or abuses guests or subjects them arbitrarily to offensive and insulting conduct. The

mistreatment relied upon is that Goynes, in order to collect the reward for repossessing the credit card of the Plaintiff, deceitfully misrepresented the fact that he needed to obtain the credit card for purposes of reimprinting it on a credit memorandum of Interstate Inns. This cause of action is a statement of an innkeeper's liability and not a statement of fraud since an element of fraud is the obtaining of something which the victim has a right to retain. "A person who has been adduced to do that which the law would have otherwise required him to do cannot claim to have been defrauded." 37 Am.Jur.2d 392, Fraud and Deceit, § 294; Overdeer & Aughinbaugh v. Wiley, Banks & Co., 30 Ala. 709; Bomar v. Rosser, 131 Ala. 215, 31 So. 430. The credit card was, by virtue of the credit arrangement with Gulf, the property of Gulf and subject to be repossessed at any time. The Plaintiff had no right to credit with Gulf but simply had a privilege of charging items to his Gulf account as long as Gulf was willing to accept his credit. There was, therefore, no common-law or statutory charge of fraud or deceit. This Court is, therefore, of the opinion that punitive damages against Interstate Inns and Goynes may not be substantiated on the theory of a common-law liability for fraud and deceit.

The Defendants Goynes and Interstate insist that a judgment against them for punitive damages alone cannot stand for the following reasons: First, they contend that in Alabama an award of punitive damages may not stand absent an award for nominal or compensatory damages; secondly, they contend that the apportionment of punitive damages between themselves and Holiday Inns, Inc., was contrary to law of the State of Alabama; and, thirdly, they insist that, under the law of innkeepers of the State of Alabama, no punitive damages are recoverable for violation of the innkeeper's liability for an employee's mistreatment of a guest. These contentions are equally applicable to the liability, if any, of Defendant, Holiday Inns, Inc.

## PUNITIVE DAMAGES AGAINST INNKEEPER

The question of whether or not an innkeeper may be liable for punitive damages for the abuse of its guests by its employees acting within the scope of their authority depends upon the amalgamation of the law of innkeeper's responsibility by the Supreme Court of Alabama in Dixon v. Hotel Tutwiler Operating Co., 214 Ala. 396, 108 So. 26 (1926), of the New York law of innkeeper's responsibility for abusive conduct of its employees to its guests as set out in DeWolf v. Ford, 193 N.Y. 397, 86 N.E. 527 (1908). The New York Court in DeWolf, supra, stated that:

"The measure of liability, if any, will be purely compensatory, and not punitive."

This language appears to clearly limit liability to compensatory damages for innkeeper's responsibility for mistreatment of a guest (entering the room of a female guest without her consent, her brother being in the room at the time, and accusing her of improper and immoral conduct). However, it appears that in DeWolf, supra, the damages were possibly limited because of the particular circumstances of that case, it being the apparent intention of the hotel to oust persons guilty of immoral conduct in their rooms and there being no evidence of willful intent to harm an innocent guest. A claim for punitive damages was apparently allowed in the case of James v. Governor's House, Inc., 284 Ala. 404, 225 So.2d 815, but that case is not authoritative as it cannot be fairly said that this question was brought to the court's attention.

Nothing explicit in the Alabama cases, by which the rule of DeWolf, supra, was adopted in Alabama, James v. Governor's House, Inc., supra; Dixon v. Hotel Tutwiler Operating Co., supra; Florence Hotel Co. v. Bumpas, 194 Ala. 69, 69 So. 566, indicate that the Alabama courts would not entertain a claim for punitive damages in a proper case involving aggravation. There is a substantial line of Alabama cases holding that punitive

damages are recoverable in tort cases where the wrongful act is malicious or attended with circumstances of aggravation. See Norton v. Bumpus, 221 Ala. 167, 127 So. 907 (1930). However, the New York law as expressed in DeWolf v. Ford, supra, has clearly been adopted by the Supreme Court of Alabama, and the New York cases have clearly decided that *DeWolf*, supra, means that only compensatory damages and not punitive damages are recoverable for an innkeeper's liability for the abuse of a guest by his employee. *Boyce v. Greely Square Hotel Co.*, 228 N.Y. 106, 110, 126 N.E. 647, 649; *McKee v. Sheraton-Russell, Inc.*, 2 Cir., 268 F.2d 669. This Court is, therefore, of the opinion that the verdict for punitive damages against Interstate and Goynes cannot be allowed to stand.

For reasons heretofore set out, the Court cannot agree with the Plaintiff's contention that the verdict against Interstate Inns and Goynes was based on the claim for fraud rather than on the claim for innkeeper's responsibility for its employee's abuse of its guests. The claim against Goynes was for deceitful treatment of a guest and required no release of a right in reliance on the false statement.

■ The verdict against Goynes and Interstate is also fatally defective because it violates the principle of Alabama law that an award of punitive damages will not be sustained where no compensatory or nominal damages are assessed against the defendant. Burke v. Knott, 20 Ala.App. 316, 101 So. 811; Kelite Products, Inc. v. Binzel, (5 Cir. 1955) 224 F.2d 131; Maring-Crawford Motor Co. v. Smith, 285 Ala. 477, 233 So.2d 484. In the latter case, the Supreme Court states what this Court construes to be an unequivocal requirement of at least nominal damages as a prerequisite to a verdict for punitive damages, as follows:

> "[17] While some jurisdictions have held that compensatory damages are essential to support an award of exemplary or punitive damages, it is the doctrine of our cases, as well as that of a substantial number of other states, that an award of nominal damages authorizes, in the discretion of the trier-of-fact, the award of punitive damages where legal malice, willfulness, and a reckless disregard accompanies the invasion of the rights of another. It would appear in such situations that 'nominal damages' are considered within the context of 'actual damages.' Louisville & Nashville RR Co. v. Smith, 141 Ala. 335, 37 So. 490; Goodson v. Stewart et al., 154 Ala. 660, 46 So. 239; Alabama Great Southern RR Co. v. Sellers, 93 Ala. 9, 9 So. 375; Burk v. Knott, 20 Ala.App. 316, 101 So. 811."

This Court will not extend the law of this State.

## APPORTIONMENT OF DAMAGES

■ This Court is convinced from the verdict itself that the jury was obviously confused and that the verdict against Interstate and Goynes should, therefore, be set aside and the Defendants' motion for a new trial should be granted. 6A Moore's Federal Practice, 5908(4); 11 Wright & Miller, 2810.

Attorneys for the Plaintiff say that the jury was not confused in awarding compensatory damages against the Defendant Gulf for violation of the Fair Credit Reporting Act and varying amounts of punitive damages against the other Defendants for violation of their innkeeper's responsibility as it felt that the wrong of Goynes was more nearly associated with him and Interstate and that Holiday Inns were further from a position of supervision over Goynes and, therefore, should not be punished to the extent that Goynes and Interstate were punished. The Court cannot accept this explanation.

■ The jury had a difficult task in assessing damages against several defendants for several wrongs proximately causing the same indivisible damage. As pointed out by the Defendants, a plaintiff cannot ordinarily recover a judgment for different amounts against

joint tortfeasors. Bull v. Albright, 254 Ala. 29, 47 So.2d 266 (1955). It would appear that this is particularly true where the vicarious liability of two separate Defendants, Holiday Inns, Inc. and Interstate Inns, Inc., result proximately from, and are measured by the culpability of, the act of the same person, Goynes. A master is liable for punitive damages for certain types of conduct of its agent acting in the line and scope of his authority as heretofore recognized, and the measure of damages is the degree of culpability of the act of the agent. It follows that the damages of each master must, therefore, be the same.

This Court is also impressed with the fact that the only actual compensatory damages awarded by the jury were against Gulf for its liability under the Credit Reporting Act. While the jury could have believed that Gulf was liable under the Credit Reporting Act for all actual damages of the Plaintiff, including his heart attack and resultant expenses and that the act of Goynes in deceitfully securing the credit card had nothing to do therewith, it is the opinion of this Court that that theory is not supported by substantial evidence in this case and that the actual damages must have, at least in part, been attributable to the alleged wrongful act of Goynes.

In so complicated a case, where potential liabilities of so many defendants from various causes of actions contributing to the same damages are submitted to a jury, it is most difficult to determine what may have affected the verdict in any way, and the Court is, therefore, of the opinion that the jury was confused in attempting to consider varying amounts of damages and natures of causes of actions and the effects thereof among four separate Defendants. It is, therefore, the opinion of this Court that the parties are entitled to have the merits of the case against Goynes and Interstate considered absent the confusing aspects of the cases against Gulf and Holiday Inns.