HARGER R. SCHELL, Plaintiff, *v.* JOSEPH VERGO and LEO MCGILLI-CUDDY, Defendants.

City Court of Rochester, Civil Branch, February 23, 1938.

*John J. Mahoney,* for the plaintiff.

*J. Eugene Goddard,* for the defendant Joseph Vergo.

No appearance for the defendant Leo McGillicuddy.

TOMPKINS, J. This is an action for assault committed by the defendant McGillicuddy while in the employ of the defendant Vergo. McGillicuddy has not answered. The plaintiff alleges that the defendant Vergo was, on December 10, 1937, the owner of a barroom and restaurant known as Vergo's Grill, located at 244 Monroe avenue in the city of Rochester, N. Y. The defendant Vergo's answer admits this allegation. The plaintiff further alleges that, while a patron of defendant Vergo's place of business on December tenth, he was assaulted by the defendant McGillicuddy, an employee of Vergo's. He seeks a recovery herein against both defendants.

At the conclusion of plaintiff's case the defendant Vergo moved to dismiss the complaint upon the ground that this court did not have jurisdiction of actions for assault. The provisions governing the City Court are found in the charter of the city of Rochester.

Section 488 of the charter (Laws of 1907, chap. 755, as amd.) defines the civil jurisdiction of the court. Subdivision 5 states: " An action to recover damages for a personal injury * * * where the sum claimed does not exceed three thousand dollars exclusive of costs." Section 37-a of the General Construction Law provides that " ' personal injury ' includes * * * also an assault, battery, * * * or other actionable injury to the person either of the plaintiff or of another." Section 110 of said law provides, " this chapter is applicable to every statute unless its general object, or the context of the language construed, or other provisions of law indicate that a different meaning or application was intended from that required to be given by this chapter."

The language of subdivision 5 of section 488 of the charter of the city of Rochester, defining the jurisdiction of this court, is clear. No provisions in the city charter pertaining to the jurisdiction of this court suggests that the words " personal injury " are to be construed in any manner contrary to the provisions of section 37-a of the General Construction Law. There is no apparent reason why such construction should not apply to the jurisdiction of this court in respect to an action brought to recover for personal injuries resulting from an assault. I hold that the court has jurisdiction of actions for assault.

The evidence shows that about one A. M. on the morning of December tenth the plaintiff, homeward bound, stopped at the defendant Vergo's place of business, entered that part where the defendant has a bar. The plaintiff purchased a glass of beer, paid for it, and then proceeded to experiment with a machine sometimes termed a " pin ball " machine. Not satisfied that the machine correctly reported the results of his skill or luck, he complained to McGillicuddy, who had served him the beer in question. McGillicuddy failed to show interest. Shortly after plaintiff again complained to McGillicuddy and asked for the return of the nickel or nickels he had fed into the machine. The bartender was still unsympathetic. The plaintiff then turned from where he had been talking to the bartender, with the intention of leaving. Before, however, he had taken more than a step or two he felt the impact either of McGillicuddy's fist or of something wielded by him upon the left side of his face and jaw. The plaintiff's knees wobbled, but he saved himself from completely falling to the floor. He then left defendant's place of business and proceeded homeward to find solace in such applications as his unprofessional efforts might suggest. That he must have suffered pain is evident from his photograph taken next day, which showed an oversized cheek, unbeautiful to the eye. Not only did the plaintiff suffer acute pain,

but he was also, being a lawyer, subjected to humiliation on appearing in public and among sympathetic but curious friends, with a cheek swollen most noticeably beyond its natural regular pro·· portions. This condition continued for several days. At the time of the trial the plaintiff's appearance had entirely regained its usual dignified expression.

May the owner of a saloon or barroom, where malt liquors are sold, be held liable for his servant's willful assault upon a guest? Plaintiff was a guest. McGillicuddy, who served plaintiff with beer, was Vergo's servant.

The general rule is that a master is not responsible for the torts of his servant unless committed in the conduct of his business. (*Mott* v. *Consumers' Ice Co.*, 73 N. Y. 543, 547; *Muller* v. *Hillenbrand*, 227 id. 448, 451.) There are exceptions to this rule. They grow out of the duty owing by the master to the person injured. Among the oldest of these exceptions are common carriers and innkeepers. (*Boyce* v. *Greeley Square Hotel Co.*, 228 N. Y. 106; *Gillespie* v. *Brooklyn Heights R. R. Co.*, 178 id. 347.) The duty of the master here grows out of his relation to the passenger or guest, and is created or, perhaps, to be exact, defined by law. Recovery for its breach may be had in tort as well as on contract. (*Gillespie* v. *Brooklyn Heights R. R. Co.*, *supra*, p. 352; *Boyce* v. *Greeley Square Hotel Co.*, *supra*, p. 111.)

This right of action has been extended to bathhouse proprietors. (*Aaron* v. *Ward*, 203 N. Y. 351.) In this case the plaintiff, having bought a ticket of admission, was ejected from the defendant's premises. She sued for breach of contract. In holding that she was entitled to recover damages for the indignity she suffered by reason of her ejectment, as in the case of a common carrier or an innkeeper, the court referred to the Civil Rights Law, section 40, saying (at p. 356) that " our statute has since been amended so as to expressly include keepers of bath-houses;" and, continuing (on p. 357), thereby " her status became similar to that of a passenger of a common carrier or the guest of an innkeeper," and holding that she was entitled to the same measure of damages.

By this same section 40 of the Civil Rights Law " a place of public accommodation " now includes restaurants, saloons, barrooms and places where malt liquors are sold. If the inclusion of bathhouses in this enumeration of " places of public accommodation " is sufficient to place the same responsibility on their proprietors as attaches to common carriers and innkeepers in relation to their liability for a breach of duty by their servants to guests or passengers, then why, being " a place of public accommodation," is not a similar duty owed by the proprietor of a saloon to his

guests, the duty to protect them from the torts of his servants? Both logic and common sense assert that should be so. He invites generally. He may not exclude because of race, creed or color. Those who accept his invitation become his guests when they partake of what he offers. They should be entitled to protection from the willful trespass of those he employs to serve them.

In 15 Ruling Case Law, under the topic of " Intoxicating Liquors," it is said (at p. 428), referring to the duty and liability of a saloon keeper to patrons on the premises, " the greater number of decisions and the better reason appear to favor placing on the proprietor the duty of seeing to it that the patron is not injured, either by those in his employ or by drunken or vicious men whom he may choose to harbor. * * * and where such an act was done by the defendant's servant left in charge of the saloon, such was held to present even a stronger case against the defendant." McKeon v. Manze (157 N. Y. Supp. 623) is directly in point. The defendant Manze was the proprietor of a saloon operated in connection with a hotel or lodging house. The plaintiff McKeon visited the saloon for the purpose of purchasing a beer. The defendant Taft, Manze's employee, engaged in an altercation with a guest called " Happy," threw a beer glass at " Happy," which unhappily landed in the plaintiff's face, inflicting a bad cut. The plaintiff recovered in the City Court of Buffalo. On appeal the recovery was affirmed, the court holding that even though Manze did not sustain towards the plaintiff the technical relation of an innkeeper, nevertheless, " substantially the same duties and obligations exist as to such persons. The same rules apply quite generally to places which the public are invited to patronize." The case seems to me to be a salutary application of the extension of the obligations of an innkeeper to safeguard his guests to the proprietor of a saloon, which is now, by the provisions of section 40 of the Civil Rights Law, a place of " public accommodation."

Judgment in favor of the plaintiff, against each defendant, in the sum of $100, as damages for his pain, suffering and humiliation.