June McKEE, Plaintiff-Appellee,

v.

SHERATON–RUSSELL, INC., Defendant-Appellant.

No. 179, Docket 25098.

United States Court of Appeals
Second Circuit.

Argued Jan. 23, 1959.

Decided July 6, 1959.

Hand, Circuit Judge, dissented in part.

---

Edward F. Cummerford, New York City (Edward F. Cummerford, William J. Brennan, New York City, of counsel), for plaintiff-appellee.

Goldwater & Flynn, New York City (Monroe Goldwater, Milton Small, Bernard Katz, Alan Morris, New York City, of counsel), for defendant-appellant.

Before HAND and WATERMAN, Circuit Judges, and BYERS, District Judge.

WATERMAN, Circuit Judge.

Plaintiff, June McKee, brought this action against the defendant hotel to recover for injuries she alleged she sustained when her room in that hotel was invaded. The jury returned a verdict in her favor for $5,000 compensatory and $5,000 punitive damages. Judgment was entered on the verdict against the defendant for $10,000. The defendant appeals, contending that the district court below misconstrued the applicable New York State law.

Shortly after midnight of Saturday, September 4, 1954, plaintiff, who had reached New York that evening from Detroit, arrived at the Sheraton-Russell, registered, and was assigned a room with bath on the seventh floor.

She testified that when she retired on Sunday night, September 5, she locked her door and attached a "Do Not Disturb" sign to the outside door knob. About 6:45 A. M. on September 6, the next morning, she arose and went to her bathroom. Reentering her bedroom she discovered, crouched near the end of her bed, the bellboy who upon her arrival at the hotel had shown her to her room. Plaintiff was undressed and, attempting to cover herself, she tried to get the bellboy to leave. He remained, however, for some twelve to twenty minutes, making remarks which we regard as suggestive; and, near the end of his stay, he advanced upon her with hands outstretched. She finally managed to get him out of the room without his physically touching her, but shortly thereafter he returned and attempted to persuade her not to tell anyone what had happened. She suffered fright and shock, and she also proffered evidence tending to show that this occurrence had aggravated a pre-existing urinary ailment.

The bellboy, who was called to the witness stand by the court, corroborated the plaintiff's story that he was in fact in her room that morning. He testified, however, that he was not on duty, that he believed Miss McKee had checked out and that her room was unoccupied, that he wanted to take a radio from there to the locker room for his own use, and that he was not in Miss McKee's room in the course of, or in furtherance of, the business of the hotel. He obtained the passkey he used from the hotel desk where room keys were readily accessible to the bellmen. He denied that he was in the room for as long a time as plaintiff claimed, and denied that he was other than respectful to her.

It appeared that the bellboy was then 21 years old, had been employed at the Sheraton-Russell for a year and a half, and for undisclosed reasons had been discharged within a week following the events in suit. It was also demonstrated that before he had been hired the hotel had made inquiries with respect to his fitness for the job, and that these inquiries had been satisfactorily answered. Also, it was shown that it was not customary for any bellboy to enter any hotel guest room at 6:45 A. M. for any hotel purpose, whether the room be occupied or unoccupied.

Federal jurisdiction in this case is based upon diversity of citizenship, and we must examine the issues before us in the light of the law of New York. These issues relate to the legal obliga-

tions imposed upon innkeepers by the innkeeper-guest relationship.

█ The first issue we consider deals with that portion of the district court's charge stating: "If you find that the employee of the defendant did in fact enter the plaintiff's room without her permission nor for any justifiable reason, such entry of the room is sufficient to make the defendant liable." Defendant took exception to this instruction. We are of the opinion that defendant was correct in so doing, for we believe the charge imposes too strict a duty upon the hotel. DeWolf v. Ford, 1908, 193 N.Y. 397, 86 N.E. 527, 21 L.R.A.,N.S., 860, appears to be the leading New York case defining the innkeeper-guest relationship. There the defendant hotel's servant entered the plaintiff's room without her consent and in vile and insulting language erroneously accused her of impropriety and immorality. In reversing a dismissal of the complaint the Court of Appeals said:

> "One of the things which a guest for hire at a public inn has the right to insist upon is respectful and decent treatment at the hands of the innkeeper and his servants. That is an essential part of the contract, whether it is express or implied. This right of the guest necessarily implies an obligation on the part of the innkeeper that neither he nor his servants will abuse or insult the guest, or indulge in any conduct or speech that may unnecessarily bring upon him physical discomfort or distress of mind. The innkeeper, it is true, is not an insurer of the safety, convenience, or comfort of the guest. But the former is bound to exercise reasonable care that neither he nor his servants shall, by uncivil, harsh, or cruel treatment, destroy or minimize the comfort, convenience and peace which the latter would ordinarily enjoy if the inn were properly conducted; due allowance being always made for the grade of the inn and the character of the accommoda-

tion which it is designed to afford." 193 N.Y. 397, 404, 86 N.E. 527, 530. In the case before us the district court's instruction did not impose the duty of "reasonable care" spelled out in DeWolf, but, instead, imposed a more rigorous one—that of an absolute duty upon the hotel to protect the guest from any improper disturbance. Hence the defendant is entitled to a new trial.

██ On the new trial the district court should make clear to the jury that the reasonable care which an innkeeper must exercise for the safety, convenience or comfort of its guest will vary with the grade and quality of the accommodations that the innkeeper offers. It would appear there is agreement that the defendant-hotel holds itself out to be a first-class residential hotel. That circumstance should properly be considered by the jury in determining whether defendant took the precautions that the operation of a first-class residential hotel requires. Thus, for instance, the jury may determine, upon adequate instruction, whether defendant, consistent with the standards of care demanded of such operation, took the proper precautions to safeguard its room keys, and if the jury should believe the defendant did not measure up to those standards it would impose liability upon it under the rule of DeWolf v. Ford.

█ However, defendant contends that it should not have to undergo a new trial because its liability must be predicated upon facts demonstrating that the bellboy acted within the scope of his employment and, accepting all of the plaintiff's testimony at face, there was no evidence introduced tending to show that the bellboy's conduct was in fact within the scope of his employment. For this reason, therefore, defendant claims the district court erred in denying defendant's motion to dismiss at the close of the plaintiff's case and in denying a renewal of that motion at the close of all the evidence. Likewise, after verdict, the defendant moved to set aside the verdict but did not move for judgment

notwithstanding the verdict. In this posture we cannot order the court below to enter judgment for the defendant, even if we were to agree with defendant, for it failed to take the proper steps to give us that power. Johnson v. New York, N. H. & H. R. Co., 1952, 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77. Nevertheless we deal with this issue because it will be present at the new trial.

■ Is defendant liable for the bellboy's actions if these actions were not within the scope of his employment, and there is no showing that defendant ratified them, or no showing that the defendant was negligent in hiring or retaining him? The district court held that liability could be imposed. We agree. DeWolf v. Ford, supra, is not directly in point, for in that case the servant was acting within the scope of his employment, and the court had to decide nothing further. However, the New York Court of Appeals appears to have construed the rule stated therein as extending beyond that particular situation. In Stone v. William M. Eisen Co., 1916, 219 N.Y. 205, 114 N.E. 44, L.R.A. 1918B, 291, a young lady brought suit alleging that when she went to defendant to have braces fitted to her feet one of its servants while examining her attempted to have sexual intercourse with her. That act was clearly without the scope of the servant's employment, but the court affirmed an order denying defendant's motion for judgment on the pleadings. It relied upon a contractual requirement of decent and respectful treatment implied from the confidential relation of the parties, and indicated that the same requirement existed between an innkeeper and its guest.

"The implication arises whenever one person is placed in the control or protection of another. It grows out of peculiar and special relationships. It has been applied between carrier and passenger * * * It has also been applied between innkeeper and guest. DeWolf v. Ford, 193 N.Y. 397, 86 N.E. 527, 21 L.R.A.,N.S., 860 * * *" 219 N.

Y. at pages 208–209, 114 N.E. at page 45. (Emphasis added.)

Thus the Court of Appeals implied that in some situations an innkeeper could be held liable for acts of servants committed without the scope of their employment. The lower New York courts also seem to have adopted this approach. In Trebitsch v. Goelet Leasing Co., Inc., 1st Dept. 1929, 226 App.Div. 567, 235 N.Y.S. 426, affirmed, 1929, 252 N.Y. 554, 170 N.E. 140, in refusing to extend the innkeeper rule to apartment house owners, the court stated that rule to be one imposing liability on the innkeeper for a willful assault by its servant committed for that servant's own personal satisfaction. McKeon v. Manze, Sup.Ct.Erie Co. 1916, 157 N.Y.S. 623, relying upon innkeeper law, held a hotel and bar owner liable for an assault committed upon a barroom customer by a servant acting without the scope of his employment. And Schell v. Vergo, City Ct. of Rochester 1938, 166 Misc. 839, 4 N.Y.S.2d 644, is to the same effect.

Support for this position may also be found in those New York cases dealing with the liability of an innkeeper for the loss of or for harm caused to goods belonging to a guest. Basing their result upon the special relationship existing between the parties, those courts have consistently held that, in the absence of a statute to the contrary, an innkeeper is liable for the goods of a guest in all cases except when the loss or harm is occasioned by the fault of the latter. Millhiser v. Beau-Site Co., 1929, 251 N.Y. 290, 167 N.E. 447; Hancock v. Rand, 1883, 94 N.Y. 1; Wilkins v. Earle, 1871, 44 N.Y. 172; Hulett v. Swift, 1865, 33 N.Y. 571; Cohen v. Janlee Hotel Corp., 1st Dept. 1949, 276 App. Div. 67, 92 N.Y.S.2d 852, reversed on other grounds, 1950, 301 N.Y. 736, 95 N.E.2d 410. If an innkeeper cannot escape liability for damage to a guest's goods by showing that the damage was occasioned by a servant acting without the scope of his employment, it is difficult to understand why an innkeeper should be able to use that defense to

escape liability for injury to a guest's person.

■ The last claim of error presented by defendants is well-founded. The district court instructed the jury that it might, if it desired, assess punitive damages. It seems clear to us that punitive damages cannot be assessed under New York law in cases such as this. The rule is set out in DeWolf v. Ford, 1908, 193 N.Y. 397, 406, 86 N.E. 527, 531, 21 L.R.A.,N.S., 860. "The measure of liability, if any, will be purely compensatory, and not punitive * * *" And affirmation appears in Boyce v. Greeley Square Hotel Co., 1920, 228 N.Y. 106, 110, 126 N.E. 647, 649. "[The] purpose of [the language in DeWolf v. Ford] was to exclude upon the new trial granted the awarding of exemplary damages * * *"

Reversed and remanded.

HAND, Circuit Judge (dissenting in part).

I agree that the judgment must be reversed, but I do not think that, if the evidence is the same on a new trial, the case should be submitted to a jury. Indeed, were it not for the decision of the Supreme Court in Johnson v. New York, New Haven & Hartford Ry., 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77, I should have thought that we might remit the case to the District Court with an instruction to direct a verdict for the defendant in compliance with its motion at the close of the evidence. I should do this because it appears to me that the New York law does not impose any liability upon an innkeeper for personal maltreatment of a guest by one of his servants, unless the servant was acting within the scope of his authority, or unless the innkeeper had not used due diligence in selecting the servant, or in supervising his conduct.

The only decisions of the Court of Appeals that have dealt with this situation are DeWolf v. Ford, 193 N.Y. 397, 86 N.E. 527, 21 L.R.A.,N.S., 860 and Boyce v. Greeley Square Hotel Co., 228 N.Y. 106, 126 N.E. 647; in both of which the servant was a hotel detective who in the discharge of his duties charged a guest with using the room for immoral purposes. Each opinion cites with apparent approval Clancy v. Barker, 8 Cir., 131 F. 161, at page 163, 66 L.R.A. 653, in which the majority said of hotel servants, that it was "too well settled to require the citation of any authority that the master is not responsible ordinarily for the negligent acts of his servants, unless they are committed while the servant is rendering some service for or in behalf of the master." In DeWolf v. Ford, supra, after a somewhat inconclusive discussion of a number of decisions, the opinion concluded as follows (193 N.Y. at page 408, 86 N.E. at page 532): "All these cases bear certain analogies to the case at bar, but none are authoritative, for the precise principle is not involved. They have been cited because these analogies indicate, if they do not determine, that the innkeeper is not a lonely exception to the rule of respondeat superior, when a guest is assaulted or injured under circumstances which would generally make other employers liable for acts of their servants." In Boyce v. Greeley Square Hotel Co. (supra), 228 N.Y. on page 109, 126 N.E. on page 649, the same court followed the doctrine I have just quoted, saying: "The defendant is liable for the act of his servant. The rule of respondeat superior is applicable. A master is civilly liable for all acts done by his servant in the prosecution of the business of the master entrusted to him." In both cases the servant was acting within his authority, and the only question was whether the innkeeper was exempt because he had an exemption peculiar to his occupation. It is true that the courts did not expressly declare that he would not also be liable when the servant acted outside his authority, but I submit that if they had approved any such doctrine they would not have spoken of the situation as one governed by the law that makes other employers liable. Moreover, not only does it appear that they were thinking only of a possi-

674

ble limitation upon the customary liability, as appears in the phrase, "lonely exception" in DeWolf v. Ford, supra; but the defendant had argued for a broad immunity of all innkeepers from any liability whatever for personal injuries to their guests (193 N.Y. at page 400, 86 N.E. 527). Both decisions squarely assimilated the position of an innkeeper to that of any other employer.

In Stone v. William M. Eisen Co., 219 N.Y. 205, 114 N.E. 44, L.R.A.1918B, 291, the plaintiff was assaulted by an employee of the defendant to which she had applied "to treat her feet and prescribe for and to fit upon her certain braces or appliances for the care, cure, and correction of the defects and injuries to her feet." The court held that from this relation "(d)ecent and respectful treatment is implied in the contract from the confidential relation of the parties, and especially because of the necessary exposure of the person of the patient" (219 N.Y. at page 208, 114 N.E. at page 45). The decision seems to me irrelevant to the liability of an innkeeper to his guest. Besides, the employee's misconduct was while he was engaged in the business for which he had been employed. In Aaron v. Ward, 203 N.Y. 351, 96 N.E. 736, 38 L.R.A.,N.S., 204, the misconduct was by an employee who was acting in the discharge of his duties, even assuming, as seems probable, that the court meant to assimilate a "bathing establishment" to a hotel (203 N.Y. at page 355, 96 N.E. 736).

McKeon v. Manze, Sup.Ct.Erie Co., 157 N.Y.S. 623, and Schell v. Vergo, 166 Misc. 839, 4 N.Y.S.2d 644, did indeed concern assaults that appear to have been outside the servant's authority, and the courts apparently supposed that they were following the doctrine of DeWolf v. Ford, supra, 193 N.Y. 397, 86 N.E. 527, 21 L.R.A.,N.S., 860. However, each was the decision of a single judge, who did not discuss whether the servant's act was, or was not, authorized; and I cannot think that they justify the conclusion that the law of New York has departed from the long existing doctrine, going back to Calye's Case, 4 Coke 202, 206, that an innkeeper is not an "insurer" of the safety of the person of his guest against injury; but is responsible only for "the exercise of reasonable care for the safety, comfort, and entertainment of his visitor," Clancy v. Barker, supra, 131 F. at page 163.

In the case at bar there can be no doubt, I should suppose, that it will appear on the new trial as it did on the first, that the bellboy's conduct was plainly beyond the scope of his authority; and, if so, the plaintiff must rest her case upon the defendant's failure to exercise care in his selection for service as a bellboy, or at least in its supervision of him.

I altogether agree with my brothers that in no event is there any justification for punitive damages.