225 So.2d 815

**Mrs. Ruth T. JAMES**

v.

**GOVERNOR'S HOUSE, INC.,**
a Corporation.

**3 Div. 248.**

Supreme Court of Alabama.

Aug. 7, 1969.

John P. Kohn, Montgomery; Ira De Ment, Montgomery, for appellant.

James Garrett, Charles A. Stakely, Jr., Rushton, Stakely & Johnston, Montgomery, for appellee.

**LAWSON, Justice.**

Late in the afternoon of July 21, 1965, Mrs. Ruth T. James, her twelve-year-old daughter, her eighteen-month-old son, and her sister, Mrs. D. W. Stoddard, registered as guests of the Governor's House Motel, hereinafter referred to as the motel, in the City of Montgomery. Mrs. James and her party, after their bill was paid, left the motel on July 23, 1965. The motel is operated by Governor's House, Inc., a corporation.

On November 30, 1965, Mrs. James filed suit in the Circuit Court of Montgomery County against Governor's House, Inc., a corporation, seeking to recover damages in the amount of $200,000 which she alleged she sustained on July 21, 1965, at the motel as a result of the conduct of certain agents, servants or employees of the defendant.

The case went to the jury on Mrs. James' complaint, which contained seven counts, and on the defendant's plea of the general issue in short by consent, with leave, etc.

The jury returned a verdict in favor of the defendant. Judgment was rendered in accord with the verdict. After her motion for new trial was denied, Mrs. James appealed to this court.

On this appeal we are not concerned with the sufficiency of the evidence to go to the jury or with any assertion that the verdict was not sustained by the evidence. So there is no occasion to set out herein any of the testimony adduced in the trial below other than that of Mrs. James as it bears on the alleged wrongful conduct of the defendant's agents, servants and employees.

Mrs. James testified that shortly after she and her party reached the room assigned to them, they put on bathing suits and went to the motel swimming pool. Mrs. James did not go swimming but remained at the pool for approximately an hour looking after her young son. He began to cry and Mrs. James then carried him to their room. Her daughter and sister remained at the pool. Upon entering the room Mrs. James "did not close the door," she "just pushed the door to." While she was engaged in removing the little boy's bathing suit someone "knocked" on the door of the room. A Negro bellboy entered the room and told Mrs. James he had come for the purpose of locking the door between the room occupied by Mrs. James and her party and an adjoining room. The bellboy asked Mrs. James if he could assist her in removing the little boy's bathing suit. She answered in the negative. The bellboy persisted and said, "I am good at this," and tried to remove the boy from his mother's arms, but Mrs. James prevented him from doing so. Then, according to Mrs. James, the bellboy "pushed me back and started kissing me on my neck and feeling me * * * he started putting his hands all over me." Mrs. James told the bellboy she heard someone coming and then he left.

Upon regaining her composure, Mrs. James called a Mr. Allen, the manager of the motel, on the phone and told him what had occurred. According to Mrs. James,

Mr. Allen, in the phone conversation, told her, "Don't come here with your damn lies." Later, when Mr. Allen came to her room, he "said something about 'your damn lies.'"

We believe the foregoing summary of Mrs. James' testimony is sufficient for the consideration of the written charge given at the request of the defendant which the appellant, plaintiff below, insists should work a reversal of the judgment here under review. We will consider that charge later in the opinion.

We come now to a consideration of the several counts of Mrs. James' complaint, because the nature of those counts has a bearing on our consideration of appellant's contention that the giving of the charge hereafter to be considered should work a reversal.

In brief filed here on behalf of appellant the several counts of the complaint are characterized as follows:

"* * * Counts One through Three of the complaint claimed on common-law assault and battery. * * * Count Four of the complaint claimed on common-law assault and battery and wrongful entry under the Innkeeper's Law. * * * Counts Five and Six were again for common-law assault and battery. * * * and Count Seven was based on the Innkeeper's Law for insults to a guest by the Innkeeper. * * *"

In several places in appellant's brief reference is made to the "Innkeeper's Law" but appellant's concept of the "Innkeeper's Law" of this state is not spelled out in the brief.

Section 11, Title 24, Code 1940, reads: "In the absence of a special contract, as is authorized in the succeeding section, the rights of guests, and the liability of the keeper, remain as at common law."

But the provisions just noted were not included in Act 412, approved November 13, 1959, Acts of Alabama 1959, Vol. 2, p. 1046, the title of which act reads: "To revise and amend Title 24, Code of Alabama 1940, which relates to hotels and innkeepers." Perhaps the Legislature in enacting Act 412, *supra,* deemed it unnecessary to reenact the provisions of § 11, Title 24, Code 1940, because of the provisions of § 3, Title 1, Code 1940, which provide: "The common law of England, so far as it is not inconsistent with the constitution, laws and institutions of this state, shall, together with such institutions and laws, be the rule of decisions, and shall continue in force, except as from time to time it may be altered or repealed by the legislature."

In Florence Hotel Co. v. Bumpus, 194 Ala. 69, 69 So. 566, a suit against a hotel based on an alleged breach of duty imposed by law, and growing out of the relation of innkeeper and guest, we said that in the absence of a special contract, as is authorized, the rights of the guest and the liability of the innkeeper remain as at common law. But the opinion in that case was written when the provisions of § 4538, Code 1907, were in effect, which section read as did § 11, Title 24, Code 1940.

In so far as we are aware, there is no constitutional or statutory provision of this state which is inconsistent with the common-law rule relative to the liability of an innkeeper to guests for their mistreatment at the hands of the innkeeper or his servants, agents or employees.

In Florence Hotel Co. v. Bumpus, *supra,* we observed that an interesting and instructive discussion of the respective rights and duties and responsibilities growing out of the guest-innkeeper relationship at common law is found in the opinion of the court of last resort of the state of New York in the case of De Wolf v. Ford, 193 N.Y. 397, 86 N.E. 527, 21 L.R.A.,N.S., 860. In Dixon v. Hotel Tutwiler Operating Co., 214 Ala. 396, 108 So. 26, we referred to *De Wolf* as being a leading case on the subject. In both of our cases last cited we quoted with approval from *De Wolf*. In *De Wolf* the defendant hotel's servant entered the plaintiff's room without her consent and in vile and insulting language erroneously accused her of impropriety and immorality. The

Court of Appeals of New York reversed a judgment dismissing the complaint. In Dixon v. Hotel Tutwiler Operating Co., *supra,* we quoted with approval the following language from the opinion in the *De Wolf case:*

" * * * The innkeeper holds himself out as able and willing to entertain guests for hire, and, in the absence of a specific contract, the law implies that he will furnish such entertainment as the character of his inn and reasonable attention to the convenience and comfort of his guests will afford. If the guest is assigned to a room upon the express or implied understanding that he is to be the sole occupant thereof during the time that it is set apart for his use, the innkeeper retains a right of access thereto only at such proper times and for such reasonable purposes as may be necessary in the general conduct of the inn or in attending to the needs of the particular guest. * * * It is equally clear that for the purpose of enabling the innkeeper to fulfill his express or implied contract to furnish his guest with such convenience and comfort as the inn affords, he and his servants must have such access to the room at all such reasonable times as will enable him to fulfill his duty in that behalf. It is obvious that as to this general right of entry no hard and fast rule can be laid down, for what would be reasonable in a case where a room is occupied by two or more guests, or where access to one room can only be had through another, might be highly unreasonable where a separate room is assigned to the exclusive use of a single guest. It is also manifestly proper and necessary that an innkeeper should have the right to make and enforce such reasonable rules as may be designed to prevent immorality, drunkenness, or any form of misconduct that may be offensive to other guests, or that may bring his inn into disrepute, or that may be radically inconsistent with the generally recognized proprieties of life. To these reserved rights of the innkeeper the guest must submit. But the guest also has affirmative rights which the innkeeper is not at liberty to willfully ignore or violate. When a guest is assigned to a room for his exclusive use, it is his for all proper purposes and at all times until he gives it up. This exclusive right of use and possession is subject to such emergent and occasional entries as the innkeeper and his servants may find it necessary to make in the reasonable discharge of their duties; but these entries must be made with due regard to the occasion and at such times and in such manner as are consistent with the rights of the guest. One of the things which a guest for hire at a public inn has the right to insist upon is respectful and decent treatment at the hands of the innkeeper and his servants. That is an essential part of the contract whether it is express or implied. This right of the guest necessarily implies an obligation on the part of the innkeeper that neither he nor his servants will abuse or insult the guest, or indulge in any conduct or speech that may unnecessarily bring upon him physical discomfort or distress of mind. * * *"

Since the appellant's brief cited Florence Hotel Co. v. Bumpus, *supra,* and Dixon v. Hotel Tutwiler Operating Co., *supra,* we assume that counsel for appellant considers that this court has adopted the quotations in those cases from the *De Wolf case, supra,* as constituting the "Innkeeper's Law" of this state. We think that is a justifiable assumption in so far as the quotations were applicable to the facts of those cases.

In every count of the complaint in this case the plaintiff alleged that an assault and battery was committed upon her person on July 21, 1965, at the motel by an agent, servant or employee of the defendant while acting within the line and scope of his authority. All of the counts except Count III show that the guest-innkeeper relationship existed at the time of the alleged assault and battery. Count IV not only alleges that an assault and battery was committed on the plaintiff by an agent, servant or employee of the defendant (he is not named) while acting within the line and scope of his employment, but further alleges "that while such a guest, an agent,

servant or employee of the Defendant (not named), while acting within the line and scope of his employment, wrongfully entered the Plaintiff's room, made indecent, lewd, licentious, foul, filthy, libidinous, and obscene sexual advances toward and proposals to the Plaintiff in the presence of her infant son." We assume that the inclusion in Count IV of the language just quoted prompted counsel for appellant to say, in effect, that Count IV was based in part on a violation of the "Innkeeper's Law."

Count VII reads:

"Plaintiff adopts all the allegations of fact contained in Count IV of this complaint relative to the conduct of the agent, servant or employee of the Defendant corporation, Johnny Lee, and further avers that one 'Allen', believed to be R. E. Allen, a second agent, servant or employee of Defendant, whose true and correct name is otherwise unknown to the Plaintiff, but which said description is intended to describe the manager of said Defendant motel or inn, at the time complained of, to-wit: July 21, 1965, while acting within the line and scope of his employment, and upon being informed of the foregoing facts concerning the treatment of the Plaintiff, did treat the Plaintiff with disrespect and indecency in accusing the Plaintiff of lying and of fabricating said facts concerning Johnny Lee and by so doing caused Plaintiff to suffer indignities, insults and humiliation as a direct result and consequence of said action of said agent, servant or employee 'Allen' while acting within the line and scope of his employment. Plaintiff further avers she suffered and continues to suffer permanent injuries to her nervous system as a result of said action on the part of said 'Allen' as aforesaid.

"And the Plaintiff claims punitive damages."

As heretofore shown, Johnny Lee was not mentioned in Count IV of the complaint, but for present purposes we consider that Count VII adopts the averments of Count IV to the effect that a servant, agent or employee of the defendant (Johnny Lee, a bellboy) wrongfully entered plaintiff's room at a time when she was a guest of the defendant and while acting within the line and scope of his employment made indecent, etc., sexual advances and proposals to the plaintiff and committed an assault and battery on her in the manner described in said Count IV.

Count VII charges assault and battery by one Johnny Lee while acting within the line and scope of his employment and the use of insulting language by Lee and Allen to the plaintiff, all within the line and scope of their employment and at a time when the guest-innkeeper relationship existed.

[redacted] The appellant has made one assignment of error. It reads: "The trial court erred in denying appellant's motion for a new trial." This assignment has the effect of raising as a distinct assignment of error every well-stated ground in the motion for new trial except that the verdict was contrary to law. In other words, a general assignment of error on appeal grounded on the refusal of the trial court to grant a motion for a new trial is sufficient to invite a review of the ruling on the basis of any ground well stated in the motion and properly argued by appellant; that is, the general assignment of error on appeal for refusing the motion for new trial is sufficient to bring up for review the argued grounds of the motion so raised that they would be good if they were separate assignments of error.-Matthews v. Maynard, 274 Ala. 330, 148 So.2d 629; Grimes v. Jackson, 263 Ala. 22, 82 So.2d 315; Allred v. Dobbs, 280 Ala. 159, 190 So.2d 712.

Ground 22 of the motion for new trial asserts error by the trial court in giving at the request of the defendant the following written charge:

"Charge X. I charge you, gentlemen of the jury, that it is the law in Alabama that there is no liability on the Defendant if an assault is committed by an em-

ployee from a motive or purpose solely and alone to satisfy his sensuous desires and not in furtherance of the business of the Defendant."

Charge X could have been refused without error on the ground that it purports to state a rule of law in the abstract, without instructing the jury as to the effect of the rule on the facts adduced in the trial of the case.-Birmingham Southern R. Co. v. Ball, 271 Ala. 563, 126 So.2d 206; Frith v. Studdard, 267 Ala. 315, 101 So.2d 305; Moore v. Cooke, 264 Ala. 97, 84 So.2d 748.

But it is not error to give to the jury a charge which simply states a legal principle, if it is correctly stated; that is, if the charge states a correct principle of law (Goodgame v. Louisville & N. R. Co., 218 Ala. 507, 119 So. 218), and is not misleading.-Marbury Lumber Co. v. Westbrook, 121 Ala. 179, 25 So. 914; Moore v. Nashville, C. & St. L. Ry., 137 Ala. 495, 34 So. 617.

The language of Charge X was apparently lifted by counsel for appellee from the opinion of the Court of Appeals of Alabama in Western Union Telegraph Co. v. Hill, 25 Ala.App. 540, 150 So. 709, cert. denied, 227 Ala. 469, 150 So. 711. Also see Great Atlantic & Pacific Tea Co. v. Lantrip, 26 Ala.App. 79, 153 So. 296; Western Union Telegraph Co. v. Hill, 5 Cir., 67 F.2d 487.

We have said that it is a mistake to suppose that expressions in judicial opinions, properly there used, can be made to serve as clear, succinct statements of the law in special charges to the jury in other cases.-Kansas City, M. & B. R. Co. v. Matthews, 142 Ala. 298, 39 So. 207.

Neither the *Western Union Telegraph Co. case* nor the *Great Atlantic & Pacific Tea Co. case* was involved with a suit by a female guest against an innkeeper for alleged sexual assaults committed upon her by an agent, servant or employee of the innkeeper.

In McKee v. Sheraton-Russell, Inc., 2 Cir., 268 F.2d 669, it appears that one June McKee, a female guest of the Sheraton-Russell hotel, brought suit in the United States District Court for the Southern District of New York against the hotel to recover for injuries she alleged she sustained when her room in the hotel was invaded by a bellboy who made suggestive remarks to her and advanced upon her with hands outstretched, but who did not succeed in physically touching her. Judgment for the plaintiff was rendered based on a jury verdict in the plaintiff's favor. The defendant hotel appealed to the United States Court of Appeals, Second Circuit, where the judgment of the district court was reversed on the ground that under New York law a hotel does not have an absolute duty to protect its guests from any improper disturbance, but only has a duty of exercising reasonable care for the safety, convenience and comfort of its guests and therefore the giving of an instruction which imposed an absolute duty upon the hotel to protect its guests from any improper disturbance was a prejudicial error. In reaching that conclusion, the Circuit Court of Appeals stated that De Wolf v. Ford, *supra,* appeared to be the leading New York case defining the innkeeper-guest relationship and quoted at length from that case. As we have heretofore shown, this court has, in effect, adopted the rule enunciated in the *De Wolf case.*

In dealing with the contention of the hotel that it should not have to undergo a new trial because its liability must be predicated upon facts demonstrating that the bellboy acted within the scope of his employment and, accepting all of the plaintiff's testimony at face value, there was no evidence introduced tending to show that the bellboy's conduct was in fact within the scope of his employment, the Court of Appeals said:

"Is defendant liable for the bellboy's actions if these actions were not within the scope of his employment, and there is no showing that defendant ratified them, or no showing that the defendant was negligent in hiring or retaining him? The district court held that liability could be im-

posed. We agree. De Wolf v. Ford, supra, is not directly in point, for in that case the servant was acting within the scope of his employment, and the court had to decide nothing further. However, the New York Court of Appeals appears to have construed the rule stated therein as extending beyond that particular situation. In Stone v. William M. Eisen Co., 1916, 219 N.Y. 205, 114 N.E. 44, L.R.A.1918B, 291, a young lady brought suit alleging that when she went to defendant to have braces fitted to her feet one of its servants while examining her attempted to have sexual intercourse with her. That act was clearly without the scope of the servant's employment, but the court affirmed an order denying defendant's motion for judgment on the pleadings. It relied upon a contractual requirement of decent and respectful treatment implied from the confidential relation of the parties, and indicated that the same requirement existed between an innkeeper and its guest.

"'The implication arises whenever one person is placed in the control or protection of another. It grows out of peculiar and special relationships. It has been applied between carrier and passenger * * * *It has also been applied between innkeeper and guest.* De Wolf v. Ford, 193 N.Y. 397, 86 N.E. 527, 21 L.R.A.,N.S., 860 * * *' 219 N.Y. at pages 208–209, 114 N.E. at page 45. (Emphasis added.)" (268 F.2d, at p. 672)

█. We are of the opinion that Charge X does not state a correct principle of law in a case of the kind presently under consideration, nor can the giving of said charge be justified on the ground that in each count of the complaint the sexual assault and battery was alleged to have been committed by a servant, agent or employee while acting within the line and scope of his authority or employment. It is not so framed as to clearly convey to the jury the idea that said assault and battery under the pleadings had to have been committed while the bellboy was acting within the line and scope of his authority and employment.

There is yet another reason why the giving of Charge X must work a reversal. This case, whether correctly or not, was tried by the court and counsel for both sides on different theories of law. In its oral charge the trial court said:

"* * * While we have seven Counts there are essentially two different theories of law that have been presented by the plaintiff in this particular case. One is what we call the innkeeper-guest relationship and the other concerns itself with the law of assault and battery * * *".

Charge X, if it stated a correct principle of law, had no application to the so-called innkeeper-guest theory of liability as treated by the trial court. The record shows affirmatively that this charge was of concern to the jury, which requested further instructions relative to said charge. The trial court sought to alleviate the jury's concern about Charge X by orally explaining his purpose in giving said charge. We cannot be sure that the explanation was sufficient to cure the misleading tendencies of said charge.

We entertain the view that the giving of Charge X must work a reversal of this case.

If upon remandment there is to be another trial it is hoped that the plaintiff's complaint will be amended so as to present clearly the grounds of recovery upon which she relies in separate counts and in keeping with the rule enunciated in McKee v. Sheraton-Russell, Inc., *supra.*

The other argued grounds of the motion for new trial relate to matters which are not likely to occur on another trial and hence need not be considered in this opinion.

The judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.