Bernard TOBIN, as father and next friend of Donna Ellen Tobin, a minor, Plaintiff-Appellee,

v.

Ben J. and Julius SLUTSKY, a partnership doing business as Nevele Country Club, Defendants-Appellants.

No. 31, Docket 74–1179.

United States Court of Appeals, Second Circuit.

Argued Sept. 23, 1974.

Decided Nov. 7, 1974.

William F. McNulty, New York City (Anthony J. McNulty, New York City, Leo E. Berson, New York City, on the brief), for defendants-appellants.

Paul Martin Wolff, Washington, D. C. (Williams, Connolly & Califano, Washington, D. C., Layton & Sherman, Stuart Jay Beck, New York City, on the brief), for plaintiff-appellee.

Before LUMBARD, FEINBERG and OAKES, Circuit Judges.

FEINBERG, Circuit Judge:

Once again, at a time when the federal courts of appeals have the highest case load in their history,[1] we must, because of diversity jurisdiction, devote considerable time to deciding whether a federal district judge correctly determined a difficult question of state law.[2] The anomaly is underscored here by an apparent conflict on the precise issue between an opinion of this court and a later, highly-informed commentary by a distinguished group of state judges, discussed below. In the absence of recent definitive state judicial rulings, we feel constrained by our prior decision and uneasily adhere to it. There are two bases for our misgivings: On the issue before us, the state courts should—and will—eventually have the last word, which may well be different from ours.[3] Second, no matter what the state courts may later decide, for the litigants before us our decision, correct or not, will likely be final. Aware that such oddities accompany diversity jurisdiction, we turn to the case before us.

Defendants Ben J. and Julius Slutsky, a partnership doing business as Nevele Country Club, appeal from a $30,000 judgment in favor of plaintiff Bernard Tobin, as father and next friend of Donna Ellen Tobin, a minor.[4] The case was tried before Judge Richard H. Levet in the United States District Court for the Southern District of New York. Judge Levet directed a verdict for plaintiff on the issue of liability but allowed the jury to determine damages. Defendants appeal, arguing principally that the directed verdict for plaintiff on the question of liability was improper. For reasons given below, we hold that defendants' liability was a question for the jury, and we reverse and remand for a new trial.

## I

This lawsuit grows out of an unfortunate incident at the hotel operated by defendants in Ellenville, New York. Mr. and Mrs. Tobin and their 15-year old daughter, Donna, were guests in July 1970. Mr. Tobin paid approximately $500 for a week at what was advertised as "a family resort" with supervised activities for children and teenagers.[5] Despite such claims, four

1. Administrative Office of the United States Courts, Preliminary Annual Report of the Director I–1 (1974).

2. For other recent diversity cases where we have had to decide close issues of New York law, see, e. g., Modave v. Long Island Jewish Medical Center, 501 F.2d 1065 (2d Cir. 1974); East Hampton Dewitt Corp. v. State Farm Mutual Automobile Ins. Co., 490 F.2d 1234 (2d Cir. 1973).

3. See the concurring opinion in United Services Life Ins. Co. v. Delaney, 328 F.2d 483, 485 (5th Cir.), cert. denied, 377 U.S. 935, 84 S.Ct. 1335, 12 L.Ed.2d 298 (1964), where

Judge Brown relates the many occasions where various state supreme courts have "reversed" the Fifth Circuit on questions of state law.

4. Mr. Tobin originally sued both individually and as father and next friend of his daughter. His individual claim was dropped at the beginning of the trial.

5. Mr. Tobin testified about the Hotel's advertisement, which he read and relied upon. Such information is admissible as to representations of quality and care made by the Hotel.

days after the Tobins arrived Donna was assaulted by an employee of the Hotel.

Donna had returned from horseback riding at about 3:00 P.M. and was waiting for an elevator to go to her family's room. Robert Stevens, an employee of the Hotel who had been sitting in the lobby, came over and stood beside her. When Donna entered the elevator, he followed. Stevens then directed the elevator to the top floor, pulled out a knife 7 to 8 inches long and told Donna that if she said anything he would "slash" her throat. With his knife at her back, Stevens forced Donna down a hallway and toward a door to the roof, which he opened with a key. Once on the roof, Stevens molested Donna, unbuttoning her shirt and unzipping her pants, placing his hands inside her shirt and down into her underwear, and exposed himself. Donna attempted to get away, but Stevens held the knife at her throat and threatened to kill her if she tried to escape. Only after she promised Stevens not to tell anyone about the occurrence did he allow Donna to leave.

Donna testified about the incident, recalling that she cried and shook as it occurred, and was so scared that she could not stop even when Stevens told her he would not let her go until she stopped shaking. Testimony had to be halted as Donna began to cry at the trial while she told of the attack. Mr. and Mrs. Tobin were also trial witnesses, but the judge effectively precluded them from giving much evidence as to the effect of the incident on Donna.[6] There was no medical testimony. Various answers to interrogatories established that Stevens was a service employee at the Hotel, who had been hired three days before the incident through the Louis Employment Agency[7] and after a brief interview by the Hotel's housekeeper.

At the close of plaintiff's case, defendants moved to dismiss the complaint. The judge reserved decision on the motion, and defendants put in no evidence. Both sides then moved for a directed verdict on the issue of liability. The judge granted plaintiff's motion and submitted the issue of damages to the jury, specifically excluding plaintiff's claim of punitive damages.[8] The jury returned a verdict of $30,000 for plaintiff.

II

Defendants' principal claim on appeal is that the district judge erred in taking the issue of liability away from the jury and directing a judgment for plaintiff on that question. Defendants also argue that the judge should have directed a verdict for them because there was no showing that the acts of Stevens were within the scope of his employment or that the Hotel was negligent in any way. Finally, defendants claim that the damage award was excessive.

In assessing the standard of care defendants owed plaintiff, the applicable law is that of New York, as both parties concede. Determining the content of that law, however, is no easy matter. The three leading cases in the New York Court of Appeals bearing on the standard of care due a guest from an innkeeper were written over a half-century ago and their import is far from clear. In DeWolf v. Ford, 193 N.Y. 397, 86 N.E. 527 (1908), a hotel detective entered the plaintiff's room without her consent and inaccurately accused her of immorality. In reversing a dismissal of the complaint, the Court of Appeals said:

> One of the things which a guest for hire at a public inn has the right to insist upon is respectful and decent treatment at the hands of the innkeep-

6. The judge refused to allow the Tobins to describe examples of how their daughter's behavior had changed after the assault. These rulings were unduly restrictive.

7. Plaintiff's action was initially brought against both the Louis Employment Agency and the Slutsky partnership. Prior to trial, the claim against the Agency was dismissed.

8. Plaintiff's cross appeal, alleging that the ruling on punitive damages was in error, has been withdrawn.

er and his servants. That is an essential part of the contract, whether it is express or implied. This right of the guest necessarily implies an obligation on the part of the innkeeper that neither he nor his servants will abuse or insult the guest, or indulge in any conduct or speech that may unnecessarily bring upon him physical discomfort or distress of mind. *The innkeeper, it is true, is not an insurer of the safety, convenience, or comfort of the guest. But the former is bound to exercise reasonable care* that neither he nor his servants shall, by uncivil, harsh, or cruel treatment, destroy or minimize the comfort, convenience and peace which the latter would ordinarily enjoy if the inn were properly conducted, due allowance being always made for the grade of the inn and the character of the accommodation which it is designed to afford. [Emphasis added.] 193 N.Y. at 404, 86 N.E. at 530.

In Stone v. William M. Eisen Co., 219 N.Y. 205, 114 N.E. 44 (1916), plaintiff alleged that when she went to defendant to have braces fitted to her feet, one of defendant's employees attempted to have sexual intercourse with her. In affirming an order that denied defendant's motion for judgment on the pleadings, the Court of Appeals relied upon a seemingly absolute requirement of decent and respectful treatment implied from the confidential relationship, and stated:

The implication arises whenever one person is placed in the control or protection of another. It grows out of peculiar and special relationships. It has been applied between carrier and passenger * * * *It has also been applied between innkeeper and guest.* DeWolf v. Ford, 193 N.Y. 397 [86 N. E. 527] . . . . [Emphasis added.] 219 N.Y. at 208–209, 114 N.E. at 45.

A few years later, in Boyce v. Greeley Square Hotel Co., 228 N.Y. 106, 126 N. E. 647 (1920), the Court of Appeals had another case of a house detective breaking into the room of a female guest and verbally abusing her. Although the issue there was primarily the extent of damages which plaintiff could recover, in affirming a jury verdict for plaintiff the court returned to the reasonable care language of *DeWolf* and stated:

The defendant does not question, under the facts of this case, the conclusions: The acts of the servant were violative of *its obligation* to refrain and *to use reasonable care* that its servant refrained from unreasonably interfering with the privacy of the plaintiff in the room assigned to her and from abusing or insulting her or indulging in any conduct or speech that might necessarily bring upon her physical discomfort or distress of mind. [Emphasis added.]

228 N.Y. at 109, 126 N.E. at 649. However, later in the opinion, the court compared carriers and innkeepers in a manner reminiscent of the language from *Stone,* quoted above:

In the instant case the plaintiff asserted the injury of bodily pain. It is not necessary to determine with exact discrimination and accuracy whether the right of action in the case at bar is based upon a violation of a contract between the parties created through implication of the law or upon the infraction of an obligation or duty imposed by the law upon the defendant. The plaintiff was entitled to recover, upon the evidence in her behalf, upon the theory of a tort or a breach of contract by the defendant. . . . Frequently a given state of facts will sustain either theory. . . . As a general rule, mental suffering resulting from a breach of contract is not a subject of compensation. *The rule does not obtain, however, as between a common carrier or an innkeeper and an insulted and abused passenger or guest,* or the proprietor of a public resort and a patron publicly ejected. . . . [Emphasis added.] Id. at 110–111, 126 N.E. at 649.

These three decisions and others in the lower courts of New York were the

subject of careful analysis by this court in McKee v. Sheraton-Russell, Inc., 268 F.2d 669 (2d Cir. 1959), a diversity case similar to this one. In *McKee,* plaintiff alleged that a hotel bellboy invaded her room while she was undressed, made suggestive remarks, "advanced upon her with hands outstretched" and remained for some 12 to 20 minutes until plaintiff persuaded him to leave. The trial judge had charged the jury (which thereafter returned a verdict of $5,000 compensatory and $5,000 punitive damages) that:

> If you find that the employee of the defendant did in fact enter the plaintiff's room without her permission nor for any justifiable reason, such entry of the room is sufficient to make the defendant liable.

268 F.2d at 671. A panel of this court reversed. Judge Waterman, writing for himself and District Judge Byers, held that under DeWolf v. Ford, supra, this charge was incorrect because it

> did not impose the duty of "reasonable care" spelled out in DeWolf, but, instead, imposed a more rigorous one— that of an absolute duty upon the hotel to protect the guest from any improper disturbance.

Id. Accordingly, the case was remanded with the following instructions:

> On the new trial the district court should make clear to the jury that the reasonable care which an innkeeper must exercise for the safety, convenience or comfort of its guest will vary with the grade and quality of the accommodations that the innkeeper offers. It would appear there is agreement that the defendant-hotel holds itself out to be a first-class residential hotel. That circumstance should properly be considered by the jury in determining whether defendant took the precautions that the operation of a first-class residential hotel requires. Thus, for instance, the jury may de-

termine, upon adequate instruction, whether defendant, consistent with the standards of care demanded of such operation, took the proper precautions to safeguard its room keys, and if the jury should believe the defendant did not measure up to those standards it would impose liability upon it under the rule of DeWolf v. Ford.

Id. Relying principally on Stone v. William M. Eisen Co.,[9] *supra,* the majority in *McKee* also held that under New York law the defendant hotel could be held liable even if the bellboy's actions

> were not within the scope of his employment, and there is no showing that defendant ratified them, or no showing that the defendant was negligent in hiring or retaining him.
>
> . . .

Id. 268 F.2d at 672. Judge Learned Hand sharply dissented on these propositions, citing many of the same cases relied on by the majority. Since "the bellboy's conduct was plainly beyond the scope of his authority," Judge Hand would have limited the issues on retrial to whether the hotel had used due diligence in hiring or supervising its employee. Id. 268 F.2d at 674. Finally, all three members of the panel agreed that in cases of this sort New York law did not allow punitive damages.

Thus, in *McKee* this court construed the law of New York—at least in 1959 —to demand of the innkeeper a duty to exercise "reasonable care" "for the safety, convenience or comfort" of his guests, commensurate with "the grade and quality of the accommodations" offered. Id., 268 F.2d at 671. We rejected the idea that New York imposed "an absolute duty . . . to protect the guest from any improper disturbance," but said that a guest might recover for an assault by a hotel employee even without proving that the employee was

---

9. Judge Waterman also cited a number of other cases in the lower New York courts, e. g., Trebitsch v. Goelet Leasing Co., 226 A.D. 567, 235 N.Y.S. 426 (1st Dep't), aff'd, 252 N.Y. 554, 170 N.E. 140 (1929) ; McKeon v. Manze, 157 N.Y.S. 623 (Sup.Ct.Erie Co. 1916) ; and Schell v. Vergo, 166 Misc. 839, 4 N.Y.S.2d 644 (City Ct. of Rochester 1938).

acting within the scope of his employment or that the hotel was negligent "in hiring or retaining him." Id., 268 F.2d at 672.

Since the *McKee* decision, there have been no pronouncements on the issue from the New York Court of Appeals, but there has been significant commentary from a committee of state trial judges in a book of Pattern Jury Instructions containing extensive discussion of New York law.[10] Volume 1, first published in 1965, with a second edition in 1974, discusses the liability of an innkeper to his guest and analogizes it to that of a common carrier to its passengers for "breach of an implied condition of the contract establishing the relationship between the employer and plaintiff."[11] That conclusion, according to the commentary, rests upon the language in Stone v. William M. Eisen Co., quoted at p. 1100 *supra*, which explicitly compares the carrier-passenger relationship to that of innkeeper-guest. Such a duty is a strict one, under which the innkeeper is absolutely liable for assaults or insults by its employees, unless caused by the guest's own improper act.[12] The commentary recognizes that "reasonable care" language was used in DeWolf v. Ford, *supra*, which preceded *Stone*, and in Boyce v. Greeley Square Hotel Co., *supra*, which followed it, as well as in *McKee*, but nonetheless flatly states, "the Stone case appears to be in accord with the weight of authority."[13]

Thus, we are most uncertain of what the law of New York is—more so than usual in making such an inquiry. Yet, as we have already noted, we must declare it for these parties even though we cannot resolve the issue definitively. Absent a clear trend in subsequent New York state decisions[14] following the Pattern Jury Instructions' characterization of an innkeeper's liability, we must follow our own appraisal in *McKee*. We construe the law of New York to oblige an innkeeper to use reasonable care, commensurate with the quality of the accommodations offered,

---

10. Preparation for this book began in 1962 at the suggestion of former New York Court of Appeals Chief Judge Desmond. Then Justice Bernard Meyer was Chairman of the Committee on Pattern Jury Instructions of the Association of Supreme Court Justices which operated under the auspices of the Judicial Conference of the State of New York. The 1974 edition is published through the Office of Court Administration.

11. Pattern Jury Instructions, supra, at 562.

12. Id. at 561–563.

13. Id. at 563.

14. Nor can we say that there is an absolutely clear nationwide trend. Various jurisdictions differ over whether a hotel is (1) only responsible up to a duty of reasonable care, (2) an insurer of a guest's safety from assaults by hotel employees, or (3) not responsible at all unless the employee is acting within the scope of his employment. E. g., in Danile v. Oak Park Arms Hotel, Inc., 55 Ill.App.2d 2, 203 N.E.2d 706 (1965), a guest was raped by a drunken hotel bellboy. In affirming the jury verdict for plaintiff the court approved an instruction charging the hotel with "a high degree of care," 203 N. E.2d at 709, and said that evidence regarding protection of the passkey and supervision of the bellboy was sufficient to create a jury question on the issue. A different approach was taken in Crawford v. Hotel Essex Boston Corp., 143 F.Supp. 172 (D. Mass.1956) (Aldrich, *D. J.*), in which plaintiff recovered from a hotel for an attack by the house detective. The trial judge found that Massachusetts law created a contract right to be free from attacks by hotel employees, in effect making the hotel an insurer against such assaults. Finally, in Cary v. Hotel Rueger, Inc., 195 Va. 980, 81 S.E.2d 421 (1954), a hotel was held not liable in damages when a bellboy shot and killed a guest during an argument about money owed the guest. The act was found not within the scope of the bellboy's. employment. See also, Dantos v. Community Theaters Co., 90 Ga.App. 195, 82 S.E.2d 260 (1954), where the theater owner was held not responsible for the manager's act of sodomy upon a 7-year old child since the act was not within the scope of the manager's duty and allegations of defendant's knowledge of the manager's deviant character were insufficient.

While these cases indicate how much variation exists, the prevailing view seems in accord with the duty of reasonable care position we have taken here. 28 Ford.L.Rev. 559, 562 (1959) (discussing McKee v. Sheraton-Russell, Inc., supra). See also Annot., 34 A.L.R.2d 372 (1954).

to see that his guest is not abused, injured or insulted by his employees. In the case of a first-class family resort, reasonable care would mean a high degree of care. Indeed, examination of the New York cases leads us to believe that this duty of reasonable care has generally been interpreted to be a severe one. We have been able to find only one case where a patron injured by an employee was denied recovery from the establishment. Martinez v. Zoga Rest, Inc., 144 N.Y.S.2d 540 (Sup.Ct. Bronx Co. 1955). And in that case it appears that the plaintiff may have brought the injury upon herself.

No matter how strict the standard, however, the hotel is not an insurer and proof of injury to a guest caused by a hotel employee should not entitle a plaintiff to a directed verdict. In that respect, we believe that the district judge erred here in taking the issue from the jury. Indeed, we have lingered over defendants' second contention that the verdict should have been directed against, rather than for, plaintiff because there was insufficient proof of lack of reasonable care.[15] But there too we conclude that under New York law a jury issue was created in the circumstances of this case; e. g., was it reasonable to have no policing of the lobby or of the elevators to prevent incidents such as this?[16]

■■ Accordingly, we remand for a new trial. For the guidance of the district court and the parties, we note that we agree with the judge's rulings on the record before him that punitive damages could not be recovered and that the compensatory damages awarded by the jury were not excessive.

Judgment reversed and case remanded for further proceedings consistent with this opinion.

15. We have no such hesitation in rejecting the argument that defendants are not liable because Stevens was not acting within the scope of his employment. *McKee* flatly holds the contrary.

16. The standard to be applied here in directing a verdict presents no problem since the

OAKES, Circuit Judge (concurring):

I concur in so much of Judge Feinberg's opinion as deals with the merits of the case, but, for reasons that need not be detailed here, I do not concur in the implication of the first sentence, if not the first paragraph of the opinion, that diversity jurisdiction should be abandoned. I would hope that the additional light shed on New York hotel owners' liability by Judge Feinberg's opinion would be helpful in the future to the New York state courts themselves or perhaps to the New York legislature, since the opinion so sharply points out the difficulty in reconciling the New York cases.

New York rule accords with the general formulation. Noonan v. Midland Capital Corp., 453 F.2d 459, 461 (2d Cir.), cert. denied, 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 333 (1972).